EXHIBIT G

LEXSEE 2007 U.S. DIST. LEXIS 84920

**MERCATUS GROUP LLC, Plaintiff, v. LAKE FOREST HOSPITAL, VILLAGE of LAKE BLUFF, MICHAEL PETERS, DAVID BARKHAUSEN, and RICK LESSER, Defendants.**

07 C 2042

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2007 U.S. Dist. LEXIS 84920; 2007-2 Trade Cas. (CCH) P75,968*

November 15, 2007, Decided
November 15, 2007, Filed

**COUNSEL:** [*1] For Mercatus Group LLC, Plaintiff: W. Gordon Dobie, LEAD ATTORNEY, Brian D Werner, Attorney at Law, Winnetka, IL; William Edward Walsh, Winston & Strawn LLP, Chicago, IL.

For Lake Forest Hospital, Defendant: David Marx, LEAD ATTORNEY, Erin C. Arnold, Stephen Yusheng Wu, McDermott, Will & Emery LLP (Chicago), Chicago, IL.

For Village of Lake Bluff, Michael Peters, David Barkhausen, Rick Lesser, Defendants: Adam M. Kingsley, Peter Michael Friedman, LEAD ATTORNEYS, Holland & Knight LLC, Chicago, IL; Howard P. Levine, Laura Lee Scarry, DeAno & Scarry, LLC, Wheaton, IL; James L. DeAno, DeAno & Scarry, Chicago, IL.

**JUDGES:** Blanche M. Manning, United States District Judge.

**OPINION BY:** Blanche M. Manning

**OPINION**

**MEMORANDUM AND ORDER**

Plaintiff Mercatus Group, LLC ("Mercatus") brings suit against defendants Lake Forest Hospital ("LFH"), Village of Lake Bluff (the "Village"), and individual defendants Michael Peters, David Barkhausen, and Rick Lesser, all of whom are trustees of the Village (the "Trustees"). The Village and the Trustees are referred to collectively as the "Village Defendants." In its complaint, Mercatus alleges that LFH sought to monopolize the diagnostic medical imaging market in eastern Lake County, Illinois [*2] and exclude Mercatus from that market.

To that end, Mercatus has filed a complaint alleging the following nine counts: Count I (attempted monopolization under § 2 of the Sherman Act against LFH); Count II (conspiracy in restraint of trade under § 1 of the Sherman Act against LFH); Count III (substantive due process violation under *42 U.S.C. § 1983* against the Village and Trustees); Count IV (procedural due process violation under *42 U.S.C. § 1983* against the Village and Trustees); Count V (state law ultra vires action against the Village and Trustees); Count VI (equal protection violation under *42 U.S.C. § 1983* against the Village and Trustees); Count VII (tortious interference with prospective economic advantage against LFH); Count VIII (tortious interference with prospective economic advantage against LFH); and Count IX (claim for violation of vested rights against the Village).

Both LFH and the Village Defendants separately move to dismiss Mercatus's complaint under *Fed. R. Civ. P. 12(b)(6)*. For the reasons stated below, LFH's motion to dismiss is granted in part and denied in part and the Village Defendants' motion to dismiss is granted.

**I. Facts**

For purposes of this motion to dismiss, [*3] the court accepts as true the following well-pled allegations. Mercatus develops and runs "physician centers" that compete with hospitals like LFH in the delivery of diagnostic imaging services including nuclear imaging, CT scans, and MRI. In 2004, Mercatus began plans to build a physician center in Lake Bluff, Illinois (the "Mercatus Center"), approximately three miles away from LFH. According to Mercatus, the new center would drive down prices for diagnostic imaging and increase access to health care.

Case 1:07-cv-06116 Document 19-8 Filed 01/11/2008 Page 2 of 15

Page 2
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

Mercatus alleges that the property it sought to build on (which it refers to as the "Shepard Land" because the property already featured an automotive sales dealership on part of the property called Shepard Chevrolet) was zoned L-2 under Lake Bluff zoning ordinances, which allowed it automatically to be used for the medical office center it wanted to develop. Thus, Mercatus alleges that it merely was seeking site plan approval from the Village Board, which it agrees it needed under Lake Bluff ordinances, [1] and that initially, the Village never raised the issue of Mercatus needing a "special use" permit.

> 1 The relevant portion of the Lake Bluff Village Ordinance, 10-5B-11, states as follows: [*4] "Approval by the Village of a site plan and supporting plans (to scale) pursuant to the procedures set forth in Section 10-1-9 of this Title, shall be required prior to construction of any new building in the Light Industry District (L-2) . . . ."

According to Mercatus, however, Trustee Lesser, a physician at LFH, told Mercatus that he would not support the Mercatus Center because of the potential harm to LFH. After Lesser and LFH voiced their opposition to the Center, "the Village informed Mercatus for the first time that it would need a 'special use' permit," and that site plan approval was contingent on special use permission. Cmplt. at P 36. The Shepard Land was already governed by a 1972 Special Use Permit ("Shepard SUP"), which was amended in 1972 and 1979 (the "Amendments"). Each of the Amendments, of which the court takes judicial notice as they are matters of public record, *Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000)*(citation omitted), contained language indicating that approval of the Village Board was necessary for any future developments of the relevant portions of the Shepard Land. *See* Exh. 2 to Village Defendants' Motion to Dismiss, 1976 Amendment (stating [*5] that "[n]o further developments of Lot 4 and 5 [the lots at issue] may be made without approval of the President and Board of Trustees of the Village of Lake Bluff") and Exh. 3, 1979 Amendment (stating that "[n]o additional or further usage shall be made of said Lots 4 and 5 except as provided by the Board of Trustees of the Village of Lake Bluff.").

In late 2006, Mercatus was initially granted permission by the Board to build the Center and its site plan for the construction of a medical office building was approved by the Village's Architectural Board of Review ("ABR"). However, prior to final site plan approval by the Board, Mercatus alleges that the defendants intervened in the process to thwart competition in a variety of ways. Specifically, LFH allegedly misrepresented information to both public and private entities regarding Mercatus, the proposed center and the economic impact on LFH. Mercatus also alleges that LFH interfered with Mercatus's existing business relationships by, among other things, intimidating physicians who had agreed to work at the proposed center and causing them to back out of their commitments to Mercatus. As a result, Mercatus alleges that the Board denied [*6] upon reconsideration the "special use" permission it had granted. The Board then denied site plan approval based on the denial of the "special use" permission. [2]

> 2 As to the site plan, the Lake Bluff ordinance, 10-1-9(B) and (C), requires the site plan applicant to submit certain specified materials to the Architectural Board of Review, which is required to hold a public hearing, with notice to all owners and occupants within 300 feet of the applicable zoning lot. Any interested party may present evidence at the hearing before the ABR. Upon a decision by the ABR, the Lake Bluff ordinance notes that the ABR decision is advisory only and that final approval or disapproval is reserved to the Village Board, which reviews the ABR decision as follows:
>
> **D. Village Board Review.**
>
> 1. The Village Administrator shall notify, in writing, the applicant either in person or by certified or registered mail, return receipt requested, of the date, time, and location of the Board of Trustees meeting at which the subject site plan will be reviewed.
>
> 2. At the conclusion of its review of the site plan, the Board of Trustees shall vote in public whether to approve, disapprove, approve with conditions, or remand [*7] to the Architectural Board of Review, the site plan. Such action shall be based solely on the stan-

Case 1:07-cv-06116  Document 19-8  Filed 01/11/2008  Page 3 of 15

Page 3
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

dards for review set forth in Subsection 10-1-9.E of this Chapter.

3. The favorable vote of two-thirds of all of the Board of Trustees shall be required to either (a) approve a site plan that has been recommended for disapproval by the Architectural Board of Review, or (b) disapprove a site plan that has been recommended for approval by the Architectural Board of Review.

4. The Board of Trustees shall not deny approval of any site plan unless such denial is made by a duly adopted resolution of the Board of Trustees that includes findings of fact detailing the specific standards (listed in Subsection 10-1-9.E [below] of this Chapter) with which the site plan fails to conform.

**E. Standards for Site Plan Review.** The Architectural Board of Review shall not recommend disapproval, and the Board of Trustees shall not disapprove, a site plan submitted pursuant to this Section except on the basis of specific written findings directed to one or more of the following standards:

1. The application is materially incomplete in specified particulars or contains or reveals violations of this Title or other [*8] applicable regulations that the applicant has, after written request, failed or refused to supply or correct.

2. The proposed development depicted on the site plan fails to meet specified standards required by the provisions of this Title for the zoning district in which the subject property is located.

3. The proposed site plan is unreasonably injurious or detrimental to the use and enjoyment of surrounding property.

4. The proposed site plan creates undue traffic congestion or hazards in the public streets, or the circulation elements of the proposed site plan unreasonably create hazards to safety on or off site or disjointed or inefficient pedestrian or vehicular circulation paths on or off site.

5. The screening or landscaping proposed does not provide adequate shielding from or for nearby uses.

6. The proposed site plan creates unreasonable

Case 1:07-cv-06116    Document 19-8    Filed 01/11/2008    Page 4 of 15

Page 4
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

drainage or erosion problems.

7. The proposed site plan places unwarranted or unreasonable burdens on specified utility systems serving the site.

8. With regard to property in the CBD, the proposed site plan is inconsistent with the standards set forth in Section 10-4A-9 of this Title.

Lake Bluff Village Ordinance, 10-1-9(D) and (E).

With respect to [*9] the Village Defendants, Mercatus alleges that they participated in a scheme to deprive Mercatus of fair access to governmental process by their active participation in a sham proceeding. Specifically, Mercatus alleges that the Village Defendants manipulated approval for the Mercatus Center and subjected Mercatus to an unnecessary and illegal hearing on whether Mercatus required a "special" or "developmental" [3] use permit to build in Lake Bluff for the purpose for which the land was already zoned, i.e., a medical office building.

  3 While Mercatus refers to the Village approval as one for a "special" use, the Village Defendants refer to it as approval for "developmental" use. According to Mercatus, the extra approval required by the Board was for an (unnecessary) special use permit, while the Village Defendants assert that the approval required by the Board was simply the "developmental" approval required under the language of the Amendments. The court will use the terms interchangeably.

In addition, Mercatus alleges that the Village Defendants denied Mercatus due process by meeting in secret in violation of the Illinois Open Meetings Act and through other procedural irregularities. In [*10] these secret meetings, the participants purportedly defined the criteria to which Mercatus would be subject and then having defined those criteria, denied Mercatus due process and did not allow Mercatus to be heard at the Village board meetings.

After the Board's denial of the "special use" permit, the Village attorney stated during a January 2007 meeting regarding site plan approval that because the "use" permit was denied, site plan approval was effectively impossible to grant. Thus, the Board voted to draft a resolution that denied the Mercatus site plan because of the "special use" vote and, according to Mercatus, without consideration of the requisite criteria in the Lake Bluff ordinance.

## II. Analysis

The standard applied by a court in deciding a motion to dismiss was addressed in a recent United States Supreme Court case, *Bell Atlantic Corp. v. Twombly*, -- U.S. --, --, *127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)*. The Seventh Circuit's recent interpretation *of Bell Atlantic* is as follows:

> *Rule 12(b)(6)* permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement [*11] of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P. 8(a)(2)*. The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, --,*127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (alteration in Bell Atlantic* ). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14.*

*EEOC v. Concentra Health Servs., 496 F.3d 773, 2007 WL 2215764, at *2 (7th Cir. 2007).*

### A. Lake Forest Hospital's Motion to Dismiss

LFH argues that Mercatus's complaint should be dismissed because its alleged anticompetitive conduct is immunized by the *Noerr-Pennington* doctrine and the state action doctrine. LFH further contends that Mercatus lacks antitrust standing as to LFH's alleged non-petitioning [*12] conduct. Finally, LFH argues that upon

Case 1:07-cv-06116   Document 19-8   Filed 01/11/2008   Page 5 of 15

Page 5
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

dismissal of the antitrust claims, the court should dismiss the remaining state law claims against it. The court addresses these arguments in turn.

1. *Sherman Act (Counts I and II)*

Section 1 of the Sherman Act forbids contracts, combinations, and conspiracies that unreasonably restrain trade. *See 15 U.S.C. § 1.* Section 2 of the Sherman Act prohibits monopolization by sanctioning: "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . ." *15 U.S.C. § 2.*

a. *LFH's petitioning conduct--Noerr-Pennington doctrine*

Under the *First Amendment,* "parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." *Tarpley v. Keistler, 188 F.3d 788 (7th Cir. 1999)*(citing *United Mine Workers of America v. Pennington, 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)*("Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, [*13] either standing alone or as part of a broader scheme itself violative of the Sherman Act."); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 137-44, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).* Thus, "[t]he Sherman Act does not apply to otherwise valid governmental action that results in a restraint of trade or monopoly." *Metro Cable Co. v. CATV of Rockford, Inc., 516 F.2d 220, 227 (7th Cir. 1975)*(citation omitted). In other words, under the *Noerr-Pennington* doctrine, "those who petition government for redress are generally immune from antitrust liability." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 56, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993). See also Greater Rockford Energy and Technology Corp. v. Shell Oil Co., 998 F.2d 391 (7th Cir. 1993)*("Under the *Noerr-Pennington* doctrine, lobbying that would arguably restrain trade is protected political activity and does not violate the antitrust laws.")(citations omitted).

According to LFH, it is entitled to immunity because its allegedly anticompetitive actions of participating in meetings of the Village Board and pressuring Village Board members to change their votes are precisely those that are protected by the [*14] *First Amendment* and are not violations of the Sherman Act under the *Noerr-Pennington* doctrine. Based on the application of the facts of this case to the authority described above, this court agrees.

However, as noted by Mercatus, the *Noerr-Pennington* doctrine includes an exception to the immunity for "sham" petitions, that is, "'situations in which persons use the governmental process[,] as opposed to the outcome of that process,' to directly harm or harass another party." *Id.* (citations omitted). Such sham petitions are not protected by *Noerr-Pennington* immunity. Mercatus asserts that LFH's conduct is not protected by the *Noerr-Pennington* doctrine because the complaint alleges that: (1) LFH made a series of misrepresentations in an adjudicative (versus legislative) setting which are not protected by *Noerr-Pennington* and (2) LFH used the government (i.e., Village approval) process as a "sham" to interfere with the business of Mercatus.

i. *Are LFH's alleged misrepresentations sufficient to preclude Noerr-Pennington immunity?*

*Noerr-Pennington* immunity exists in certain circumstances even if the protected petitioning involved making misrepresentations. *Metro Cable Co., 516 F.2d at 228* ("When [*15] the concerted activities occur in a legislative or other non-adjudicatory governmental setting, they are not within the Sherman Act even though they include 'conduct that can be termed unethical,' such as deception and misrepresentation.")(citations omitted); *see also City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 383-84, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991)*("In *Noerr* itself, where the private party 'deliberately deceived the public and public officials' in its successful lobbying campaign, we said that 'deception, reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned.'")(*quoting Noerr, 365 U.S. at 145*).

"However, misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process." *Metro Cable, 516 F.2d at 226-27* (quoting *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 513, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972)*). This exception to *Noerr-Pennington* immunity has been referred to as the "sham exception" as "adapted to the adjudicatory process." *Id.* at 228 ("When, however, the concerted activities occur in an adjudicatory setting, unethical conduct that would not result in antitrust illegality in a legislative or other non-adjudicatory [*16] setting may demonstrate that the defendants' activities are not genuine attempts to use the adjudicative process legitimately and may therefore result in illegality, including illegality under the antitrust laws.")(*citing California Motor Transport, 404 U.S. at 516*).

The question, then, is whether the Village Board acted in a legislative versus adjudicatory manner in denying Mercatus approval for the center. LFH argues that the Village Board is similar to the Rockford City Council in *Metro Cable,* which the Seventh Circuit found was a

Case 1:07-cv-06116    Document 19-8    Filed 01/11/2008    Page 6 of 15

Page 6
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

legislative body. In concluding that the Rockford City Council had acted in a legislative capacity in denying a franchise to operate a cable television transmission system to the plaintiff cable company, the Seventh Circuit stated in *Metro Cable* as follows:

> The city council is a body to which the Illinois General Assembly has delegated some of the legislative powers of the state. See Art. 11, Ch. 24, Ill.Rev.Stat. The council need not, as a prerequisite to taking action, compile an evidentiary record through formal proceedings. It is free to base its actions on information and arguments that come to it from any source. As a legislative body, it and its committees [*17] operate in a political setting. Its members are subject to lobbying and other forms of ex parte influence which *Noerr* recognized are a part of the political process and means by which the people are entitled to communicate with their representatives.
>
> The mayor is an executive officer with some legislative duties, which include presiding over the city council and voting when the aldermen are equally divided. Ill.Rev.Stat., Ch. 24, § 3-11-14. Like the city council, the mayor carries out his duties in a political rather than adjudicatory setting.
>
> When the city council exercises its authority to franchise or refrain from franchising cable television systems, it still acts as a legislative body, since that is the only way it is organized and equipped to act. The franchising or licensing function could have been delegated to an administrative tribunal, in which case that function would presumably have been performed in an adjudicatory setting. Instead the function was left to and retained by a legislative body equipped to act only as a legislative body.

*Metro Cable*, 516 F.2d at 228. Accordingly, the Seventh Circuit found that the defendant's actions to influence the city council not to grant [*18] the plaintiff a cable television license (including allegations that the mayor and an alderman, who were members of the city council, were given campaign contributions in exchange for their opposition to the plaintiff's license application) were protected by the *Noerr-Pennington* doctrine. *Id.* at 229-31. LFH asserts that, like the city council in *Metro Cable*, the Village Board operates in a political setting, is not required to compile an evidentiary record through formal proceedings, is free to base its actions on information and arguments from any source, and its members are subject to lobbying and other ex parte contact, unlike an adjudicative body.

On the other hand, Mercatus argues that it has sufficiently alleged certain facts to show that the arena in which LFH delivered its purported misrepresentations (i.e., that the building of the Mercatus Center would affect LFH's profits and hinder LFH's ability to provide charitable care in the area it served) was adjudicative in nature.[4] Specifically, it refers to the allegations that LFH made misrepresentations to the Board and that the Board, in considering the site plan application, engaged in an "'ad hoc response' to Mercatus's application, [*19] directed solely at Mercatus, rather than broad policymaking directed to all Lake Bluff residents." Response [Dkt. # 42] at 6.

---

4  Mercatus initially contends that because the complaint alleges that the hearings before the Village Board were adjudicative or administrative in nature, those allegations are sufficient to survive a *Noerr-Pennington* challenge. *United States Futures Exch., LLC v. Bd. of Trade of Chi.*, 04 C 6756, 2005 U.S. Dist. LEXIS 17779, 2005 WL 2035652, at *2 (N.D. Ill. Aug. 22, 2005)(denying defendant's motion to dismiss on the ground that misrepresentations to the Commodity Futures Trading Commission may not be protected by *Noerr-Pennington* immunity and stating that "since it is possible, when viewing the allegations in the light most favorable to the Plaintiffs, that the proceedings [before the CFTC] could be considered as adjudicatory, it would not be proper for [the court] to dismiss Plaintiffs allegations at this time."). The court does not agree with Mercatus's assertion that merely by alleging that the proceedings were adjudicatory, it can necessarily survive a motion to dismiss. As an initial matter, *Twombly* now requires enough facts to support plausibility, not just possibility. *Twombly*, 127 S.Ct. at 1969 [*20] (retiring language in *Conley v. Gibson*, "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Moreover, even under the pre-*Twombly* standard, the Seventh Circuit's determination of the actions by the Rockford City Council in *Metro Cable* occurred at the motion to dismiss stage.

Case 1:07-cv-06116 Document 19-8 Filed 01/11/2008 Page 7 of 15

Page 7
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

Certain allegations could support a finding that the Board was acting in its legislative capacity. For example, the court agrees with LFH that similar to the Rockford City Council in *Metro Cable,* the complaint contains allegations that the members of the Lake Bluff Village Board were subject to lobbying and other *ex parte* influence by interested parties. Cmplt. at P 27 ("In March 2006, Mercatus attempted to meet with each of the Trustees to discuss its plans to build the Mercatus Center. Mercatus conducted meetings with several Village trustees."); Cmplt. at P 28 ("At this time, the Village President and a number of Trustees were enthusiastic supporters of the Mercatus Center in Lake Bluff. Beginning in March, the Village President had numerous conversations with [*21] Mercatus to guide Mercatus through the Lake Bluff Village approval."); Cmplt. at P 34 ("After the April [Board] meeting, Mercatus continued to meet with Village trustees to discuss concerns related to specific aspects of the site plan."); Cmplt. at P 49 ("The Mercatus Center site plan was to be voted on at the October 23, 2006 meeting of the Village Board. Before this meeting, Village President Letchinger assured Mercatus that there were enough votes to secure passage of the Mercatus Center site plan.").

On the other hand, other aspects of the Board's decisionmaking process point to an adjudicative-type proceeding. For example, pursuant to Village ordinance, the site plan applicant first submits specified materials to the ABR for its review. The ABR conducts a public hearing during which any interested party may present evidence. The ABR makes a decision and the ordinance then provides for review of the ABR's decision by the Village Board, which must notify the applicant in writing of the time, date and location of the Board meeting at which the site plan is to be reviewed by the Board. The favorable vote of two-thirds of the Trustees is required to reject the ABR's decision and either [*22] approve a site plan disapproved by the ABR or vice versa. Further, the Board cannot deny any site plan unless it issues a resolution that includes findings of fact detailing the specific standards under 10-1-9(E) with which the site plan fails to conform. Moreover, the court notes that Mercatus alleges that counsel was present at the Board meetings. These facts and allegations point to an adjudicative-type setting for the Board's consideration. *See Kottle v. Northwest Kidney Centers, 146 F.3d 1056 (9th Cir. 1998)*(concluding that alleged misrepresentations occurred in an adjudicatory context where "[t]he [certificate of need] determination by the Department b[ore] many indicia of a true adjudicatory proceeding. The Department conducts public hearings, accepts written and oral arguments, permits representation by counsel, and allows affected persons to question witnesses. The Department must issue written findings after its hearing. Its decision is appealable, and that appeal is governed by APA procedures and statutory standards.").

Accordingly, construing the allegations in a light most favorable to Mercatus, it is plausible that the Village Board was acting in an adjudicatory capacity [*23] instead of a legislative capacity, and thus, any misrepresentations made by LFH to the Village Board would not necessarily be immunized under *Noerr-Pennington.* Hence, the court denies this aspect of LFH's motion to dismiss.

While not deciding at this stage whether LFH was acting in an adjudicatory or legislative capacity, in the interests of efficiency and guiding future arguments, the court addresses two other arguments made by Mercatus in support of its position that the Board was acting in an adjudicatory capacity when LFH made the purported misrepresentations to it.

First, to the extent that Mercatus argues that the denial of approval took place in an adjudicatory setting because the decision affected only Mercatus versus a group of entities or individuals, this fact is nondeterminative. Indeed, in *Metro Cable,* the Seventh Circuit noted that the city council's decision not to grant the plaintiff a cable television franchise did not affect its ability to grant a franchise to another applicant. *See Metro Cable, 516 F.2d at 228 n. 12* ("Both plaintiff and defendants concede that the franchise or license in question was non-exclusive in the sense that the municipality was free to grant [*24] additional franchises to others if it chose to do so.").

Finally, Mercatus's citation to *People ex rel Klaeren v. Village of Lisle, 202 Ill. 2d 164, 781 N.E.2d 223, 269 Ill. Dec. 426 (Ill. 2002)*, is inapposite. In *Klaeren,* the Illinois Supreme Court held that "municipal bodies act in administrative or quasi-judicial capacities when those bodies conduct zoning hearings concerning a special use petition." *Id. at 233.* However, Mercatus's allegations contradict the assertion that what occurred before the Village Board was a hearing on a special use permit (as defined by Village ordinance) because the Lake Bluff zoning code sets out a specific procedure under which a special use permit can issue. This procedure includes a "public hearing held by the Zoning Board of Appeals," Lake Bluff Zoning Ordinance 10-2-6(E), which is clearly not alleged in the complaint.

Moreover, even if it were a hearing on a special use permit, the Illinois Municipal Code was amended in July 2006 to state that: "[a]ny special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality, home rule or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless [*25] of whether the process of its adoption is considered admin-

Case 1:07-cv-06116   Document 19-8   Filed 01/11/2008   Page 8 of 15

Page 8
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

istrative for other purposes." *65 ILCS 5/11-13-25*. Thus, *Klaeren* is inapposite.

ii. *Does LFH's conduct fall within the sham exception to the Noerr-Pennington doctrine?*

Mercatus also alleges that *Noerr-Pennington* immunity does not apply because LFH's conduct falls into the general sham exception to such immunity. Specifically, "[s]o-called 'sham' petitions--'situations in which persons use the governmental process[,] as opposed to the outcome of that process,' to directly harm or harass another party--are not protected by the *First Amendment's* right to petition." *Tarpley, 188 F.3d at 794* (citations omitted). See also *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors, Ass'n., 814 F.2d 358, 376 (7th Cir. 1987)*("If the injury is caused by persuading the government, then the antitrust laws do not apply to the squelching (*Parker v. Brown*) or the persuasion (*Noerr-Pennington*). If the injury flows directly from the 'petitioning'--if the injury occurs no matter how the government responds to the request for aid--then we have an antitrust case.").

In other words, "[a] sham situation involves a defendant whose activities are not genuinely [*26] aimed at procuring favorable governmental action at all, not one who genuinely seeks to achieve his governmental result but does so *through improper means.*" *Omni Outdoor Adver. Inc., 499 U.S. at 380* (citations and quotation marks omitted)(emphasis in original). The Supreme Court established a two-prong test for determining whether litigation [5] is a sham. *Prof. Real Estate Investors, Inc., 508 U.S. at 60*. First, the efforts must be objectively baseless such that no reasonable litigant could realistically expect success on the merits. *Id.* Second, "the court should focus on whether the baseless suit conceals 'an attempt to interfere directly with a competitor's business relationships,' through the 'use [of] the governmental process-as opposed to the outcome of that process-as an anticompetitive weapon.'" *Id. at 60-61* (citations omitted)(emphasis in original). The efforts are immunized if an objective litigant could conclude that the efforts are reasonably calculated to elicit a favorable outcome. *Id. at 60*. A court should proceed to the second part of the test only if the suit is found to be objectively baseless. *Id.*

> [5] It is not clear whether the two-prong test identified in *Professional* [*27] *Real Estate Investors, Inc.,* applies outside of the litigation context; however, the parties frame the issue as such, and therefore the court addresses the parties' arguments as they make them.

According to Mercatus, because it alleges facts sufficient to plausibly suggest sham government petitioning by LFH, its claim against LFH should not be dismissed. Specifically, as to the objectively baseless prong, it first points (without explanation) to its allegations that the property was already zoned for medical office use. From what the court can tell, Mercatus appears to be arguing that the because the land was already zoned for medical office use, any statements in opposition to the Center must have been baseless because approval of the Center was a given. However, under the relevant ordinance, the Board must make the final decision regarding special use permits. Village Ord. 10-1-9(C)(stating that ABR approval was advisory only and final approval was left to the Board). Thus, Mercatus's claim that approval was guaranteed is inconsistent with the ordinance. LFH still had a basis to protest despite the fact that Mercatus believed it was entitled to approval for its center.

Mercatus also [*28] refers to other aspects of LFH"s conduct in support of its claim that LFH's petitioning to the Board was objectively baseless. First, it points to its allegations that the defendants violated the Illinois Open Meetings Act. However, Mercatus does not articulate how violations of the Illinois Open Meetings Act [6] would support a finding that LFH's attempts to persuade the board to deny developmental use or the site plan were objectively baseless and the court fails to discern how this could be the case.

> [6] The court does not opine on whether Mercatus filed a timely Open Meetings Act challenge in the appropriate court. See *5 ILCS 120/3* ("Where the provisions of this Act are not complied with, or where there is probable cause to believe that the provisions of this Act will not be complied with, any person, including the State's Attorney of the county in which such noncompliance may occur, may bring a civil action in the circuit court for the judicial circuit in which the alleged noncompliance has occurred or is about to occur, or in which the affected public body has its principal office, prior to or within 60 days of the meeting alleged to be in violation of this Act or, if facts concerning [*29] the meeting are not discovered within the 60- day period, within 60 days of the discovery of a violation by the State's Attorney.").

Mercatus also refers to its allegation that on three occasions at Village meetings, LFH spoke in opposition to the Mercatus Center based on supposed competitive harm. According to Mercatus, this allegation supports a finding of baselessness because under the Village zoning ordinance, "competitive harm" was not one of the specified reasons that the Village Board could refuse to grant a site plan that had been approved by the ABR. However, according to Mercatus's allegations, LFH spoke at meetings where the Board was considering the issue of "developmental" or "special" use, *see* Cmplt. at P56,

Case 1:07-cv-06116 Document 19-8 Filed 01/11/2008 Page 9 of 15

Page 9

2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

which, as the court described earlier, contains no parameters regarding the basis for decision.

Even assuming, arguendo, that the site plan was being considered at the meetings during which LFH spoke, denial was still an option even if the Board was required to make a determination on the site plan based on a statutory list of factors in the Village Zoning Code. Village Ord. 10-1-9(C). Thus, LFH had its own reasons to argue against approving the Center.

"A classic example [*30] [of a sham] is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Omni Outdoor Adver., Inc., 499 U.S. at 380.* Nothing close to such allegations has been made here. Mercatus has failed to set forth any allegations in support of a claim that LFH was not genuinely attempting to obtain legitimate government action in its favor. Indeed, LFH was pressing for a certain result and that is what it received. As such, the court concludes that the "sham" exception to *Noerr-Pennington* immunity does not apply here.

b. *LFH's non-petitioning conduct* [7]

> 7 Mercatus filed a motion for leave to file a surreply to address what it argued was a new (and, therefore, improper) argument in LFH's reply in support of its motion to dismiss-that is, Mercatus's standing to raise an antitrust challenge to LFH's non-petitioning conduct. The court agrees with LFH that it properly addressed the non-petitioning conduct issue in its reply which Mercatus raised in its response. In any event, the court grants Mercatus's motion for leave to file a surreply and has also considered LFH's response [*31] to that motion.

Mercatus contends that even if LFH's petitioning conduct is immunized by the *Noerr-Pennington* doctrine, its non-petitioning conduct is not. Specifically, Mercatus points to its allegations that LFH allegedly: (1) persuaded physicians who had agreed to work at the Mercatus Center to back out of their agreements; (2) interfered with the business relationship between Mercatus and Evanston Northwestern Heathcare; (3) attempted to purchase the Mercatus Center land; (4) misrepresented that other purchasers were interested in purchasing the Mercatus Center land; (5) suggested agreements in restraint of trade with Mercatus in other markets outside of eastern Lake County; and (6) contacted another hospital to disparage Mercatus.

Mercatus's injury must be "of the type the antitrust laws were intended to prevent and . . . flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977). See also Kochert v. Greater Lafayette Health Services, Inc., 463 F.3d 710, 716 (7th Cir. 2006)*(to show antitrust injury, plaintiff must demonstrate that its "claimed injuries are of the type the antitrust laws were intended to prevent and [*32] reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation")(citations and internal quotation marks omitted). The court notes at the outset that Mercatus has failed to cite to any authority for its position that it suffered injury that the antitrust laws were enacted to protect; rather, it merely contends that is the case.

That being said, "[i]n establishing antitrust injury, courts must first delineate the *type* of interests protected by the antitrust laws . . . ." *Greater Rockford, 998 F.2d at 395* (citations omitted)(emphasis in original). As to the type of injury, the Sherman Act "does not reach conduct that is only unfair, impolite, or unethical." *Indiana Grocery, Inc. v. Super Valu Stores, Inc., 864 F.2d 1409, 1413-14 (7th Cir. 1989).* With respect to injury resulting from LFH's alleged misrepresentations or disparaging comments that Mercatus made to others (see injury described in (1) - (4) and (6) above), [8] such conduct is not a violation of the antitrust laws. *Arnett Physician Group, P.C., Greater Lafayette Health Services, Inc., 382 F. Supp. 2d 1092, 1096 (N.D. Ind. 2005)*(rejecting contention that allegations of "'publicity [*33] campaign' against construction of a new hospital causes antitrust injury. Public expressions of opinion about competitors' plans cannot provide the basis for an antitrust claim and such conduct is clearly lawful")(*citing Schachar v. American Acad. of Ophthalmology, Inc., 870 F.2d 397, 400 (7th Cir. 1989)*("[i]f such statements should be false or misleading or incomplete or just plain mistaken, the remedy is not antitrust litigation but more speech-the marketplace of ideas.").

> 8 Specifically, these allegations include that:
>
> > 1. LFH engaged in alleged anticompetitive conduct by "pressuring" physician practice groups who had signed agreements to practice at the Mercatus Center "to alter the terms of their agreements" (Cmplt. at P 45) *See Arnett, 382 F. Supp. 2d at 1096* (hiring of defendant doctors by plaintiff did not amount to anticompetitive activity or confer antitrust standing);
> >
> > 2. LFH made threatening phone calls to dissuade physicians

Case 1:07-cv-06116   Document 19-8   Filed 01/11/2008   Page 10 of 15

Page 10
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

who were considering practicing at Mercatus (*Id.* at 46);

   3. LFH offered to purchase the Shepard Land itself and attempted to dissuade Shepard from proceeding with the Mercatus contract (*Id.* at 47);

   4. A LFH employee called another hospital to boast of its [*34] actions in Lake Bluff, warn that hospital about Mercatus, and advise the hospital not to work with Mercatus. (*Id.* at 48).

Regarding the allegation in (5) that LFH engaged in anticompetitive conduct by refusing to partner with Mercatus in the Lake Bluff/Lake Forest area but expressed its willingness to do so in areas outside of Lake Bluff or Lake Forest, again, the court notes that Mercatus has not pointed to any authority that such conduct is the type of injury that the antitrust laws protect. In any event, as noted by LFH, the refusal to deal with a competitor is not an antitrust violation. *Schor v. Abbott Labs, 457 F.3d 608, 610 (7th Cir. 2006)*("[A]ntitrust law does not require monopolists to cooperate with rivals . . . . Cooperation is a *problem* in antitrust, not one of its obligations.")(emphasis in original).

As to the alleged agreement in restraint of trade (i.e., LFH expressing a willingness to partner with Mercatus outside of the relevant geographic market apparently in order to protect itself in the eastern Lake County market), LFH argues that Mercatus lacks antitrust standing. Specifically, it asserts that consumers who would be hurt by the higher prices resulting from LFH's [*35] alleged antitrust violation would be the proper plaintiffs to bring the action. *Kochert, 463 F.3d at 718* (antitrust standing refers to the party "who can most efficiently vindicate the purposes of the antitrust laws" in a particular case)(citation omitted). As noted by the Seventh Circuit, the Supreme Court has identified several factors that courts should consider in assessing standing:

   (1) [t]he causal connection between the alleged anti-trust violation and the harm to the plaintiff; (2)[i]mproper motive; (3)[w]hether the injury was of a type that Congress sought to redress with the antitrust laws; (4)[t]he directness between the injury and the market restraint; (5)[t]he speculative nature of the damages; (6)[t]he risk of duplicate recoveries or complex damages apportionment.

*Id.* (citations omitted). Because the parties do not address these factors and there are facts which could impact on the analysis, the court declines to address the antitrust standing issue at this time. Accordingly, LFH's motion to dismiss the antitrust counts, to the extent that they allege an agreement in restraint of trade, is denied.

   c. *Is LFH immune under the state action doctrine?*

LFH also argues that it is [*36] immune from antitrust liability pursuant to the state action doctrine. Under the state action immunity doctrine "the Sherman Act does not prohibit official action by, or directed by, the state." *Fuchs v. Rural Elec. Convenience Co-op. Inc., 858 F.2d 1210, 1213-14 (7th Cir. 1988)*("When the state itself in one of its incarnations performs the challenged activity, it is *ipso facto* immune from the antitrust laws."). The doctrine, which was based on principles of federalism and state sovereignty, was first enunciated by the Supreme Court in *Parker v. Brown, 317 U.S. 341, 63 S. Ct. 307, 87 L. Ed. 315 (1943)*, and is thus sometimes referred to as *Parker* immunity. As discussed by the Seventh Circuit, the state action doctrine has been described as follows:

   the antitrust laws do not apply to actions of the state which restrain trade, and therefore do not preempt laws authorizing such state action. Thus, state action immunity is not dependent on the wisdom or extent of state regulation, only on whether the state is actually acting to displace free competition. See P. Areeda and H. Hovenkamp, Antitrust Law (1987 Supp.) P 212. If (hereinafter "Areeda and Hovenkamp").

*Fuchs, 858 F.2d at 1213* (footnote omitted).

Municipalities may, [*37] like states, be immunized from antitrust liability. "[T]o be immune from the antitrust laws[,] municipalities must be acting pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Id.* at 1214 (quoting *Midcal, 445 U.S. at 105, 100 S.Ct. at 943*)(footnote in *Fuchs* omitted). The state statute need not "explicitly permit[] the displacement of competition." *Omni Outdoor Advertising Inc., 499 U.S. at 373*. Rather, the requirement of a "clear articulation" is satisfied where "the suppression of competition is the 'foreseeable result' of what the statute authorizes." *Id.* (citation omitted). Here, that requirement is met. Illinois law allows the corporate authority of each municipality to "classify, regulate and restrict the location of trades and industries and the location of buildings

Case 1:07-cv-06116    Document 19-8    Filed 01/11/2008    Page 11 of 15

Page 11

2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

designed for specified industrial, business, residential, and other uses" and "prohibit uses, buildings, or structures incompatible with the character of such districts [created by the municipality]." *65 ILCS 5/11-13-1(4)* and *(7)*. Because the foreseeable result of the Illinois statute could be the displacement of competition, the Village of Lake Bluff is entitled [*38] to state action immunity. *Omni Outdoor Advertising, 499 U.S. at 373* ("The very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition, particularly on the part of new entrants. A municipal ordinance restricting the size, location, and spacing of billboards (surely a common form of zoning) necessarily protects existing billboards against some competition from newcomers."). [9]

  9  To the extent that Mercatus alleges or argues that the Village Board is not entitled to state action immunity because it acted outside of its authority when it required additional approval based on the "further approval" language in the Amendments, it is incorrect. *Omni Outdoor Advertising, 499 U.S. at 371-72* (rejecting argument that city was not protected by *Parker* immunity when the city purportedly acted outside of its authority in enacting billboard law because "in order to prevent *Parker* from undermining the very interests of federalism it is designed to protect, it is necessary to adopt a concept of authority broader than what is applied to determine the legality of the municipality's action under state law.").

Private [*39] parties also may, like municipalities, be subject to immunity under the state action doctrine as described below:

> The Supreme Court has . . . found that private parties may [also] be immune, but only if they meet a more stringent two-part test. This test is designed to determine whether a private party is acting as an instrument of the state, or whether that individual or entity is hiding behind a "gauzy cloak" of state involvement to pursue anticompetitive private interests antithetical to the antitrust laws. *Midcal, 445 U.S. at 106, 100 S.Ct. at 943-44*. Not only must private parties show that the state clearly authorized their conduct [as required for municipalities], but also that the state actively supervised the allegedly anticompetitive policy.

*Fuchs, 858 F.2d at 1215*. "Application of this 'rigorous' test ensures that *Parker* immunity is applied only where the 'private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interest.'" *Zimomra v. Alamo Rent-A-Car, 111 F.3d 1495, 1499 (10th Cir. 1997)(quoting Patrick v. Burget, 486 U.S. 94, 101, 108 S. Ct. 1658, 100 L. Ed. 2d 83 (1988))*.

Neither LFH nor Mercatus expressly address this two-part test. [10] Rather, LFH asserts that [*40] because Mercatus alleges that the Village was the effective decisionmaker in denying Mercatus the requisite development and site plan approvals, LFH is entitled to state action protection. *Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 538 (6th Cir. 2002)*("the basic question in antitrust cases that involve municipal and private actors is whether the municipality or the regulated party made the effective decision that resulted in the challenged anticompetitive conduct. If the municipality . . . was the effective decision maker, then the private actor is entitled to state action immunity, regardless of state supervision. If the private actor was the effective decision maker, due to corruption of the decision-making process or delegation of decision-making authority, then it is not immune, unless it can show that it was actively supervised by the state."); *Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495, 1500-01 (10th Cir. 1997)*(finding private defendant immune pursuant to state action doctrine because municipality was immune and stating that "where private parties are acting under the compulsion of a municipality or other political subdivision, the same test should [*41] apply to determine state action immunity regardless of who the named defendants are"). In other words, LFH is arguing that because the Village of Lake Bluff was the "effective decisionmaker" in that it denied developmental and site plan approval, LFH should be subject to the same (less rigorous) test as the Village to determine the applicability of the state action doctrine. As a result, Mercatus's argument goes, because the Village is entitled to state action immunity, it is as well.

  10  The court does not necessarily agree that the "effective decisionmaker" approach to private party state action immunity is the proper analysis. Indeed, neither party cites to any cases from the Seventh Circuit in their discussion of state action immunity. Nevertheless, the court addresses the issue as framed by the parties. In any event, to the extent any inconsistency exists between the approach offered by the parties and the two-part test articulated by the Supreme Court, it need not be resolved as the court would reach the same conclusion under either approach.

Case 1:07-cv-06116    Document 19-8    Filed 01/11/2008    Page 12 of 15

Page 12
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

The court finds the *Zimomra* case distinguishable given that in that case, it was the government policy that caused the antitrust injury, without [*42] any discretion exercised by the private party. *Zimomra, 111 F.3d at 1500* (in addressing which test to use to determine whether the state action immunity applied--the one-part test for municipalities described above or the more stringent two-prong test applicable to private parties--and determined that because the daily usage fee was imposed by ordinance with no discretion left to the defendant car rental companies, "application of the active supervision prong [of the more stringent two-part private party test] is of little value under these circumstances because the challenged conduct is mandated and strictly controlled by the [city and county]."). Here, however, Mercatus contends that it does not allege that the antitrust injury caused by *LFH* was based on a government policy (i.e., the denial of developmental use or site plan approval); rather, Mercatus argues that LFH's anticompetitive conduct included the "Hospital's willful misrepresentations, abuse of processes, and interference with economic activity."

LFH does not directly respond to Mercatus's argument but merely asserts that "Mercatus does not allege that Lake Forest Hospital usurped the Village Board's decision making process." [*43] Rather, LFH contends that "[r]eading the Complaint in the light most favorable to Mercatus, the most one can infer is that Lake Forest Hospital influenced the Village Board to deny Mercatus development approval through public and private misrepresentations regarding the detrimental impact Mercatus's proposed physician center would have on the Hospital's delivery of charitable care." Reply at 9 (citing Compl. PP 41, 53, 68-69, 77). According to at least one of the cases cited by LFH, such alleged interference could plausibly support a determination that the private party was the "effective decisionmaker." *See, e.g., Michigan Paytel, 287 F.3d at 538* ("If the private actor was the effective decision maker, *due to corruption of the decision-making process* or delegation of decision-making authority, then it is not immune, unless it can show that it was actively supervised by the state."). It is true that the court in *Michigan Paytel* affirmed the district court grant of summary judgment in favor of the private party defendant on state action immunity grounds because even viewing the evidence in a light most favorable to the plaintiffs, the *Michigan Paytel* court was not persuaded that the [*44] private party defendant's alleged "public corruption and private dishonesty" had influenced the City's decisionmaking process so excessively that a reasonable jury could find that the city had "lost control of the decision-making process." *Id. at 537*.

Here, however, on a motion to dismiss, the court views the allegations in a light most favorable to Mercatus. Because it is plausible that Mercatus could demonstrate that LFH was the effective decisionmaker, the court denies LFH's motion to dismiss on the grounds of state action immunity.

2. *State law claims against LFH (Counts VII and VIII)*

Mercatus also asserts two state law claims of tortious interference with prospective economic advantage against LFH. These claims are based on LFH's alleged interference with Mercatus's relationship with physicians in the area as well as its relationship with Evanston Northwestern Hospital. LFH argues that the court should decline to exercise supplemental jurisdiction over these claims assuming that the court dismisses the antitrust claims against LFH and the § 1983 claims against the Village Defendants. However, given that the court is not dismissing all aspects of Mercatus's antitrust claims against [*45] LFH, it declines to dismiss the tortious interference claims against LFH.

B. The Village Defendants' Motion to Dismiss

Mercatus has also alleged claims against the Village of Lake Bluff and three of its trustees, David Barkhausen, Rick Lesser, and Michael Peters. These claims include three under *42 U.S.C. § 1983* for alleged violations of Mercatus's equal protection, substantive due process and procedural due process rights, a state law ultra vires claim, and a claim for vested rights against the Village. The Village Defendants have moved to dismiss each of these claims.

1. *Mercatus's procedural due process claim is dismissed.*

In Count IV, Mercatus alleges that the Village Defendants violated its due process rights by: (1) refusing to approve the Mercatus site plan at the January 2007 Village board meeting despite Mercatus having met all of the relevant requirements for the approval; (2) engaging in "secret" meetings and instituting sham special use hearings in October 2006 and January 2007; (3) depriving Mercatus of a vote on the site plan approval at the October 23 meeting (when that vote was tabled), which allowed for a reconsideration (and denial) of the special use vote; and (4) failing [*46] to provide Mercatus with an adequate opportunity to be heard before the Resolution was issued and before the vote on the reconsideration of the special use approval at the November 13, 2006, meeting.

The Village Defendants assert that, assuming a property interest exists, Mercatus's complaints about how the Village implemented its zoning and development approval procedures, whether right or wrong, do not implicate constitutional due process concerns. *Indiana Land Co., LLC v. City of Greenwood, 378 F.3d 705 (7th Cir.*

Case 1:07-cv-06116    Document 19-8    Filed 01/11/2008    Page 13 of 15

Page 13
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

*2004)*(alleged errors of state law cannot support a § *1983* claim). Mercatus fails to address this specific point. However, to the extent that Mercatus was due any process, [11] it received it. It attended the meetings and, with the exception of one meeting where the Board voted on whether to pass the motion to reconsider, an opportunity to be heard. Cmplt. at P 29 ("Mercatus presented plans for the Mercatus Center at the April 10, 2006 Board of Trustees meeting. Mercatus answered questions from the Trustees and interested parties about the design of the site and related traffic issues."); Cmplt. at P 56 ("After the Board approved this two-vote procedure [at the October 23, [*47] 2006 Village Board meeting], representatives of Mercatus presented facts and data concerning the economic benefits of the Mercatus Center, and the environmental impact of the construction of the Mercatus Center."); Cmplt. at P 73 ("Further, at the November 13 meeting [during which the Board approved a motion to reconsider its previous vote approving developmental or special use approval to Merctaus], Mercatus representatives were not allowed to speak in defense of the site plan to further object to these sham proceedings. Mercatus expressly requested to be heard but was informed that comment was at the discretion of the Village Board. Prior to this meeting, the Village repeatedly assured Merctaus that it would receive a fair hearing and that eventually, the Mercatus Center would be approved."); Cmplt. At P 75 (At the Village Board meeting on January 22, 2007, the Board of Trustees voted to deny Mercatus "special use" of the [subject property] . . . . This vote was conducted over the objection of Mercatus, who noted that the property was already zoned for this use . . . .").

> 11  If the court were to find that the Village Trustees were acting in their legislative capacity, Mercatus would [*48] not be entitled to notice or an opportunity to be heard. *Pro-Eco, Inc. v. Board of Commr's*, 57 F.3d 505 (7th Cir. 1995)("Governing bodies may enact generally applicable laws, that is, they may legislate, without affording affected parties so much as notice and an opportunity to be heard.").

Moreover, Mercatus's allegations all boil down to complaints that it did not receive the procedural rights accorded to it either by Lake Bluff's zoning ordinance or Illinois law. Because these are violations of state law, Mercatus has no federal procedural due process claim. *Pro-Eco, Inc.,* 57 F.3d at 514 (denying the plaintiff's claim that it had been denied due process when the County Board purportedly "did not follow the state statutes providing for public hearings, notice of those hearings, and Advisory Plan Commission input to be given to a Board of Commissioners when it promulgates zoning ordinances" because "[s]ection 1983 affords relief only if the Constitution is offended, and a violation of a state procedural statute does not offend it.").

### 2. *Mercatus's substantive due process claim is dismissed.*

Mercatus also alleges that the Village Defendants violated its rights [*49] to substantive due process based on the defendants' deprivation of Mercatus's property interest in site plan approval. Mercatus Response [Dkt. # 43] at 9. Specifically, Mercatus alleges that site plan approval should have been "automatic" based on the fact that the ABR approved the site plan. The Village Defendants contend that Mercatus's substantive due process claim should be dismissed on the ground that Mercatus did not make use of state law remedies, *River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 167 (7th Cir. 1994), and that, in any event, the Village Defendants' actions meet rational basis scrutiny.

As to the Village Defendants' argument that the plaintiff must show that their state law remedy was inadequate, Mercatus asserts that in a substantive due process claim that involves the deprivation of a property interest, the plaintiff must show *either* the inadequacy of state law remedies *or* an independent constitutional violation before the court will engage in a rational basis review. *LaSalle Bank v. City of Oakbrook Terrace,* No. 05 C 3191, 2006 U.S. Dist. LEXIS 1337, 2006 WL 59497, at *4 (N.D. Ill. Jan. 9, 2006)(*citing Lee v. City of Chicago,* 330 F.3d 456, 467 (7th Cir. 2003)). Mercatus contends [*50] that it has alleged two other independent constitutional violations, a § *1983* procedural due process claim and a § *1983* equal protection claim. However, the court has already dismissed the procedural due process claim, and for the reason described below, also dismisses the equal protection claim. Thus, Mercatus cannot show any independent constitutional violation.

As to the adequacy of the state law remedies, the Village Defendants point out that Mercatus could have instituted a mandamus action, *see Lombard Historical Comm'n v. Village of Lombard,* 366 Ill. App. 3d 715, 852 N.E.2d 916, 918, 304 Ill. Dec. 460 (Ill. App. Ct. 2006), or filed a "*Lasalle* factor" action challenging the Village Defendants' actions. *See 1350 Lake Shore Associates v. Casalino,* 352 Ill. App. 3d 1027, 816 N.E.2d 675, 684, 287 Ill. Dec. 708 (Ill. App. Ct. 2004). Mercatus does not address these cases and only responds by pointing to its conclusory allegations that these remedies were inadequate without pleading facts suggesting their plausibility. *Concentra,* 496 F.3d 773, 2007 WL 2215764, at *2 (plaintiff's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'. . . "). Moreover, Mercatus has alleged a pendent state law claim [*51] of ultra vires against the Village Defendants and a pendent state law vested rights claim against Lake Bluff, thereby negating

Case 1:07-cv-06116   Document 19-8   Filed 01/11/2008   Page 14 of 15

Page 14
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

any allegation that state law remedies are inadequate. *See Lee, 300 F.3d at 467* (rejecting substantive due process claim as to impounded vehicle in part because "far from alleging the inadequacy of state law remedies, Lee has asserted pendant [sic] state-law claims for bailment, trespass, and wrongful conversion"). Because Mercatus has not properly pled inadequate state law remedies, this allegation cannot be used to support a substantive due process claim.

### 3. *Mercatus's equal protection claim is dismissed.*

Mercatus also alleges an equal protection claim stating that the Village Defendants intentionally treated Mercatus differently than other similarly situated parties and that this treatment was motivated by the Village Defendants' animus toward Mercatus because it posed a competitive threat to Lake Forest Hospital.

Mercatus does not allege that it is a member of a protected class; rather it appears to be relying on a "class of one" equal protection concept. *See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)*("Our cases have recognized successful equal [*52] protection claims brought by a 'class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). According to the Seventh Circuit, a "plaintiff who does not belong to any 'suspect' (that is, favored) class-by definition, the situation of a class-of-one plaintiff-must, to prevail, 'negative any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Lauth v. McCollum, 424 F.3d 631, 634 (7th Cir. 2005)*(citations omitted). "'Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized.'" *Id.* (citations omitted). *See also Malec v. Vill. of Oak Brook, 06 C 5167, 2007 U.S. Dist. LEXIS 36507, 2007 WL 1468603, at *2 (N.D. Ill. May 18, 2007)*("*Lauth* requires the absence of any conceivable basis for the conduct of the government official in order to complain that the *equal protection clause* was violated"). Moreover, and most importantly here, any hypothesis as to the basis for the government's action can be made before proof is offered. *Id.* ("Since hypothesis is not proof, this test that we have articulated [*53] can often be applied in advance of discovery.")(citations omitted).

The Village Defendants' decision to deny "developmental"/ "special use" or site plan approval could have been rationally based on, as the Village Defendants assert, its preference for retail development on the site or traffic issues associated with the proposal or its concerns about the impact of the Mercatus Center on the financial solvency of Lake Forest Hospital and subsequent effect on the availability of appropriate health care for its residents. Because this court can hypothesize a rational basis for the denial of the development or special use permit or site plan approval, the Village Defendants' motion to dismiss Mercatus's equal protection claim is granted. *Malec, 06 C 5167, 2007 U.S. Dist. LEXIS 36507, 2007 WL 1468603, at *2* (dismissing equal protection claim because the court could conceive of a rational basis for the government's action). [12]

> 12   To the extent that Mercatus alleges that it was denied equal protection of the laws based on the Village Defendants' violation of state or local law, such a conclusion would contradict the Seventh Circuit's statement that violations of state law are not constitutional violations. *Pro-Eco, 57 F.3d at 515* [*54] (rejecting the plaintiff's argument that a moratorium on landfills was not rationally based because in enacting the ordinance the board deviated from state law and therefore could not have had a reasonable expectation that it would be enforced because "if [it] bought this misdirected argument, we would negate our earlier proposition that violations of state procedural statutes do not amount to constitutional violations").

### 4. *Does Mercatus have standing to sue for the alleged constitutional violations?*

The Village Defendants also contend that as to the federal claims, Mercatus lacks a constitutional property interest and therefore has no standing to sue for these purported constitutional violations. Specifically, it asserts that Mercatus's letter of intent to lease a portion of the subject property is insufficient to create a constitutionally protected property interest.

Mercatus has alleged a property interest in "the approval of its site plan to build the Mercatus Center." *See* Cmplt. at PP123, 137. Apparently in further support of Mercatus's purported property interest, the complaint alleges that Mercatus prepared an adequate site plan that was approved by the Lake Bluff ARB and that [*55] the site for the center met all of the zoning requirements.

Mercatus properly notes that a property interest is not necessary to bring an equal protection claim. *DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000)*("property interest requirement for procedural due process claims does not apply" to equal protection claim). As to the substantive and procedural due process claims, at least one court has stated that site plan approval can constitute a property interest sufficient to raise a due process claim. *Osborn v. City of Collinsville, No. 3:06-CV-00647-MJR, 2007 U.S. Dist. LEXIS 7936, 2007 WL 420142, at *3 (S.D. Ill. Feb. 5, 2007)*("property interests, such as zoning decisions, rejection of a developer's site-plans and

Case 1:07-cv-06116 Document 19-8 Filed 01/11/2008 Page 15 of 15

Page 15
2007 U.S. Dist. LEXIS 84920, *; 2007-2 Trade Cas. (CCH) P75,968

housing proposals, and denial of a building permit, may invoke the protection of substantive due process")(*citing Polenz v. Parrott, 883 F.2d 551, 558 (7th Cir. 1989)*).

The Village Defendants appear to have abandoned this argument as they fail to address it in their reply brief. Nevertheless, even assuming that Mercatus properly alleged a property interest, because the court grants the motion to dismiss the substantive and procedural due process claims asserted by Mercatus, the court need not reach [*56] this issue.

5. *Do the Trustee Defendants have absolute immunity from § 1983 liability for their actions?*

"[W]hen acting 'in the sphere of legitimate legislative activity,' legislators are to be 'immune from deterrents to the uninhibited discharge of their legislative duty.'" *Biblia Abierta v. Banks, 129 F.3d 899, 903 (7th Cir. 1997)*(internal citations omitted). As such, "[t]he doctrine of absolute legislative immunity recognizes that when acting collectively to pursue a view of the public good through legislation, legislators must be free to represent their constituents 'without fear of outside interference' that would result in private lawsuits." *Id.* (citation omitted). This shield of absolute immunity exists even if the legislator acted based on improper motives. *Id.* (citations omitted).

Moreover, absolute legislative immunity applies to local legislators. *Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)*(local legislators are "absolutely immune from suit under *§ 1983* for their legislative activities"). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id. at 54.* "Administrative or executive acts of legislators [*57] are not protected." *Rateree v. Rockett, 852 F.2d 946, 950 (7th Cir. 1988).* The Trustee Defendants contend that the acts at issue were legislative in nature, and thus, they are entitled to legislative immunity. It is their burden to establish that they are entitled to absolute immunity. *Rateree, 852 F.2d at 950.* As noted by another court in this district, whether or not actions are legislative in nature such that the legislators are entitled to absolute immunity is not easily ascertained. See *Chicago Miracle Temple Church, Inc. v. Fox, 901 F. Supp. 1333 (N.D. Ill. 1995)*("[L]ine drawing between legislative acts on the one hand and administrative or ministerial acts on the other is often difficult")(citations omitted).

However, because the court concludes that the *§ 1983* claims should be dismissed, it need not resolve this issue.

6. *State law claims against the Village Defendants* (Counts V and IX)

Under *28 U.S.C. § 1367(c)(3)*, a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has jurisdiction. *Wright v. Associated Ins. Co. Inc., 29 F.3d 1244, 1250 (7th Cir. 1994).* Because the court dismisses [*58] the federal claims against the Village Defendants, it declines to exercise jurisdiction over the state law causes of action of ultra vires and vested rights. *East-Miller v. Lake County Highway Dep't, 421 F.3d 558, 564-65 (7th Cir. 2005)*("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial")(citation and internal quotations omitted).

### III. Conclusion

For the reasons stated above, LFH's motion to dismiss [30-1] is granted in part and denied in part and the Village Defendants' motion to dismiss [29-1] is granted.

**Date: November 15, 2007**

/s/ **Blanche M. Manning**

**Blanche M. Manning**

**United States District Judge**