

LEXSEE 1995 U.S. DIST. LEXIS 15171

ARTHUR F. VINE, Personal Representative for the Estate of Richard A. Vine, Plaintiff, v. COUNTY OF INGHAM; INGHAM COUNTY SHERIFF'S DEPARTMENT; SHERIFF GENE L. WRIGGELSWORTH, DEPUTY RICHARD WHITMORE, DEPUTY PARAMEDIC STEVEN MAIER, Individually and as Agents of the County of Ingham and Ingham County Sheriff's Department, jointly and severally, CITY OF LANSING; CITY OF LANSING POLICE DEPARTMENT; JEROME BOLES, CHIEF OF POLICE, OFFICER DAVID PRENTLER, DETENTION OFFICER DAVID BENSON, DETENTION OFFICER JENNIFER FREEMAN, DETENTION OFFICER KEVIN MOORE, SERGEANT KENNETH RUPPERT, SERGEANT THOMAS WRIGHT, Individually and as Agents of the City of Lansing and the Lansing Police Department, jointly and severally, Defendants.

Case No. 5:93-CV-155

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

1995 U.S. Dist. LEXIS 15171

September 28, 1995, Decided
September 29, 1995, FILED

COUNSEL: [*1] For ARTHUR F. VINE, Personal Representative for the Estate of Richard A. Vine, RICHARD A. VINE, Deceased, Arthur F. Vine as Personal Representative for the Estate of, plaintiffs: Ronald Michael Bahrie, Lansing, MI. Geoffrey N. Fieger, Fieger, Fieger & Schwartz, Southfield, MI.

For DAVID PRENTLER, Officer, Individually and as Agent of City of Lansing and Lansing Police Department, Jointly and Severally, KEVIN MOORE, Detention Officer, Individually and as Agent of City of Lansing and Lansing Police Department, Jointly and Severally, KENNETH RUPPERT, Sergeant, Individually and as Agent of City of Lansing and Lansing Police Department, Jointly and Severally, defendants: Robert G. Kamenec, Plunkett & Cooney, PC, Detroit, MI. James S. O'Leary, Denfield, Timmer, Jamo & O'Leary, Lansing, MI. For THOMAS LEE WRIGHT, Sergeant, City of Lansing and Lansing Police Department, Jointly and Severally, defendant: James S. O'Leary, Denfield, Timmer, Jamo & O'Leary, Lansing, MI.

JUDGES: DAVID W. McKEAGUE, UNITED STATES DISTRICT JUDGE

OPINION BY: DAVID W. McKEAGUE

OPINION

OPINION AND ORDER ON POST-TRIAL MOTIONS

On April 12, 1995, judgment was entered in this case in accordance with the jury's verdict on plaintiff's outstanding claims against defendants Sergeant Kenneth Ruppert and Officer Kevin Moore. Now before the Court are several post-trial motions. Supplemental briefing ordered by the Court has been completed. The Court now addresses the motions without the benefit of a hearing.

I. MOTION FOR JUDGMENT N.O.V. OR NEW TRIAL

Defendants Ruppert and Moore complain of the judgment rendered against them in several respects. They ask the Court to award them judgment as a matter of law under *Fed. R. Civ. P. 50(b)* or, in the alternative, grant them a new trial under *Fed. R. Civ. P. 59(a)*.

On a motion for judgment as a matter of law or for judgment notwithstanding the verdict, the Court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. *Daugherty v. Campbell, 33 F.3d 554, 556 (6th Cir. 1994); Monette v. Am-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir. 1991).* "Sufficient evidence will be found unless, viewed [*2] in the light most favorable to the

Case 1:07-cv-06116    Document 19-9    Filed 01/11/2008    Page 2 of 8

Page 2
1995 U.S. Dist. LEXIS 15171, *

nonmovant, there is either a complete absence of proof on the issue or no controverted issues of fact upon which reasonable minds could differ." *Daugherty, supra.* In making this determination, the Court is not permitted to weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury. *Hawley v. Dresser Ind., Inc., 958 F.2d 720, 723 (6th Cir. 1992).*

Defendants' motion for new trial is evaluated under a different standard. The motion is entrusted to the Court's discretion. *Gafford v. General Electric Co., 997 F.2d 150, 171 (6th Cir. 1993).* The Court "must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the great weight of the evidence." *J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991).* The verdict should be upheld if it is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id.*

### A. Deliberate Indifference [*3] to Serious Medical Needs

Defendants Ruppert and Moore have been adjudged liable to plaintiff under *42 U.S.C. § 1983* for deliberate indifference to the decedent's, Richard Vine's, serious medical needs. They contend the jury's verdict was tainted by the erroneous admission of irrelevant evidence. Specifically, they argue that plaintiff should not have been allowed to introduce evidence of police policies, procedures and standards. Citing *Smith v. Freland, 954 F.2d 343, 348 (6th Cir. 1992), cert. denied, 504 U.S. 915, 112 S. Ct. 1954, 118 L. Ed. 2d 557 (1992),* they argue that "city policies do not determine constitutional law."

First, it must be noted that *Smith v. Freland* does not suggest that evidence of local law enforcement policies is *inadmissible* when considering a *Fourteenth Amendment* due process claim under *42 U.S.C. § 1983*; only that evidence of a violation of local policy does not establish a constitutional violation. Second, as defendants well know, and as the jury instructions in this case made clear, the evidence of detention facility policies and procedures was admitted in connection with plaintiff's gross negligence claim under state law. In that [*4] regard, the jury was clearly instructed that it could consider evidence that defendants violated such policies or standards, not as evidence of gross negligence, but "together with all the other evidence, in determining whether any defendant acted recklessly with substantial lack of concern for whether an injury resulted." Final Jury Instructions, pp.14-15.

Accordingly, the Court concludes the evidence was admitted for a proper purpose and the jury was properly and clearly instructed on this purpose. In the absence of any evidence to the contrary, the Court must presume that the jury followed the instructions given. *Clarksville-Montgomery County School System v. U.S. Gypsum Co., 925 F.2d 993, 1003 (6th Cir. 1991).*

Defendants Ruppert and Moore also contend the Court erred by admitting evidence of the circumstances under which Richard Vine was taken into custody and handcuffed several hours before either of them had contact with him. Defendants rely on language appearing in the Court's opinion on their earlier motion for summary judgment. In denying their motion for summary judgment on the deliberate indifference claim, the Court found that a genuine issue of material fact was [*5] presented by evidence that Ruppert and Moore failed to render or seek medical assistance even after a significant accidental blow to the head at 5:35 p.m. failed to rouse Vine.

Defendants' argument is meritless. First, the evidence was clearly admissible in connection with the claims made against co-defendant Officer David Prentler, who participated in Vine's booking and intake procedure. Second, the evidence of Vine's handcuffing at approximately noon was relevant to the jury's consideration of the circumstances under which he remained handcuffed until 5:35 p.m., when Ruppert and Moore removed the restraints. Third, the summary judgment ruling was based on the record then before the Court and did not purport to foreclose introduction of additional evidence at trial.

Finally, defendants contend the evidence against them, taken as a whole, simply does not meet the standard of liability established in *Farmer v. Brennan, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).* In *Farmer,* the Supreme Court held that a prison official may be liable for denying humane conditions of confinement "only if he knows that inmates face a substantial risk of harm and disregards that risk by failing [*6] to take reasonable measures to abate it." *114 S. Ct. at 1984.* An official cannot be found liable unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id., at 1979.* Thus, *actual knowledge* of a substantial risk of serious harm is essential to a finding of deliberate indifference. This standard was specifically incorporated into the jury instructions. Defendants contend the standard was not met by the evidence, which showed no more than that defendants *should have* perceived the substantial risk of serious harm that threatened Richard Vine.

*Farmer* observes that a defendant prison official may avoid liability by proving that he was simply unaware of even an obvious risk to an inmate's health or safety. In other words, *Farmer* observes, the jury is free to infer a defendant's knowledge from the obvious, but it is not compelled to do so. *Id. at 1982.*

Determining a defendant's state of mind presents a classic question of fact. Here, the jury, properly instructed, inferred [*7] that defendants Ruppert and Moore actually knew that Vine was threatened with serious harm and did nothing. While the Court may or may not agree with this determination, the Court cannot hold that it is irrational or against the great weight of the evidence.

### B. Gross Negligence

In an argument similar to that addressed above, defendants contend the policies and procedures evidence should not have been admitted in connection with the gross negligence claim either. In *Gallagher v. Detroit-Macomb Hospital Assoc., 171 Mich. App. 761, 431 N.W.2d 90 (1988)*, the trial court's exclusion of internal policies evidence in a malpractice action was upheld. The court held that internal rules and regulations do not establish the applicable standard of care and that expert testimony was required to establish the standard.

Consistent with the lesson of *Gallagher*, the jury in this case was instructed that it could not consider the policies and procedures evidence as establishing the applicable standard of care, and the evidence was accompanied by expert testimony on the applicable standard of care. To the extent the mere admission of such evidence could be deemed to run afoul of [*8] *Gallagher*, the error was harmless. The Court cannot say that, had the policies and procedures evidence been excluded, the jury's verdict on the gross negligence claim could not reasonably have been reached. Most significantly, defendants did not refute the evidence that they failed to provide or seek medical attention for Richard Vine after he failed to regain consciousness in spite of a blow to the head that caused a one-inch laceration. This failure, standing alone, could have reasonably justified the jury's finding of gross negligence.

Defendants further contend the jury's verdict on the gross negligence claim is tainted because the Court refused to instruct or permit argument on the impact of the decedent's comparative negligence. Defendants contend Vine caused his own death by ingesting methyl alcohol and that the jury should have been instructed to reduce his damages by a percentage equal to the extent to which his wrongful intentional conduct contributed to the proximate causation of his death. Michigan Standard Jury Instructions (Civil), 2nd ed., 11.01.

There is no question but that a comparative fault instruction may be appropriate in the context of a gross negligence [*9] claim under Michigan law. See *Hickey v. Zezulka, 439 Mich. 408, 448-50, 487 N.W.2d 106 (1992)*; *Vining v. City of Detroit, 162 Mich. App. 720, 727-28, 413 N.W.2d 486 (1987), lv. app. denied, 430 Mich. 893 (1988)*. This Court refused to give such an instruction in this case because it was not appropriate under the facts.

*Hickey v. Zezulka, supra,* is a detention facility suicide case. The detainee-decedent was negligently allowed to keep his belt and used it to hang himself in his cell. Justice Dorothy Comstock Riley, writing for a four-person majority on this point, concluded that a comparative fault instruction should have been given so as to permit the jury to apportion damages between the parties responsible for the death, the jailer and the decedent. *Id., p. 448-50.* The instruction was deemed proper, notwithstanding the defendant jailer's assumption of responsibility for the detainee's welfare and safety, because the decedent had, by his own intentional conduct, unreasonably exposed himself to the danger created by the jailer's negligence. *Id. at 448.*

Here, by contrast, the jury was faced with a gross negligence claim. Thus, apportionment of fault and damages [*10] could conceivably have come into play only if defendants were first found to have proximately caused Vine's death by their gross negligence, i.e., "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *M.C.L. § 691.1407(2)(c).* Such a finding could only have been based on a determination that Vine's need for medical assistance was so obvious and grave that defendants' failure to provide assistance could be characterized as "reckless."

Judging from the record before this Court, all of Vine's conduct that contributed to his obvious and grave condition -- the ingestion of methyl alcohol -- undeniably intentional and unreasonable conduct, preceded any contact with defendants by several hours. By his own conduct Vine had rendered himself incoherent and arguably "unconscious" by the time defendants Ruppert and Moore had any contact with him. There is no suggestion in the evidence or in defendants' argument, now or at the time of trial, that Vine did anything, intentionally or negligently, to further expose himself to danger after defendants had assumed custodial responsibility for his safety. Defendants have not, for instance, argued that Vine [*11] intentionally or negligently concealed the cause of his condition after he was taken into custody. In fact, the evidence shows that, while still coherent, he had requested medical attention prior to his arrest and had reported the methyl alcohol ingestion to at least two officers.

Case 1:07-cv-06116    Document 19-9    Filed 01/11/2008    Page 4 of 8

Page 4
1995 U.S. Dist. LEXIS 15171, *

Thus, unlike the decedent in *Hickey*, Vine did nothing, intentionally or negligently, to unreasonably expose himself to the danger created by defendants' gross negligence. The condition that threatened his life existed at the time he was arrested and continued to steadily worsen, through no additional fault of Vine's, throughout the 7 1/2-hour period of his detention. In the opinion of this Court, where the condition must necessarily have been, in the jury's collective mind, grave and obvious to defendants, and Vine did nothing to exacerbate it during the time he was in defendants' custodial care, the original cause of the condition is of little relevance to the question of liability and damages for the ensuing death. It is for this reason that the Court found *Hickey v. Zezulka* distinguishable and refused to give the comparative fault instruction. The Court remains unpersuaded that it erred in this [*12] ruling.

**C. Battery**

The jury found defendant Moore had committed a battery upon the person of Richard Vine when he rolled Vine over in such a way as to cause a one-inch laceration above his eyebrow. The jury awarded no damages, however, because the battery did not cause damage to the plaintiff estate. Defendant Moore complains of the jury instruction given by the Court on battery.

The instruction given is based directly on Michigan Standard Jury Instructions (Civil) 2nd ed., 115.02, 115.21. For the reasons stated in trial, the Court remains unpersuaded that the instruction given was inadequate or misleading under the facts of this case.

**D. Punitive Damages**

The jury verdict includes award of $ 1,000,000 in punitive damages. Defendants challenge this award as irrational and excessive, not appropriately tailored to their ability to pay. They ask the Court to strike the award or grant a substantial remittitur.

The jury was instructed on punitive damages in accordance with Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, 4th ed., § 85.19, an instruction which both plaintiff and defendants had requested and to which no party objected. The jury was thus [*13] advised that punitive damages may be appropriate to punish a defendant for extraordinary misconduct, "maliciously or wantonly or oppressively done," and to serve as an example or warning to others. Final Jury Instructions, p.21. The jury was further instructed that the amount of such damages "must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case." *Id.*, p.22.

There is no dispute that punitive damages may be recovered in a civil rights claim under *42 U.S.C. § 1983* from a defendant sued in his individual capacity. See *Smith v. Wade, 461 U.S. 30, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983)*. In particular, punitive damages may be awarded under *§ 1983* "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous indifference to the federally protected rights of others." *Id., p.56.*

It is also clear that punitive damages, designed solely to punish or to make an example of the defendant, are not recognized under Michigan law. *Kewin v. Massachusetts Mut. Life Ins. Co., 409 Mich. 401, 419, 295* [*14] *N.W.2d 50 (1980); ARDCO v. CNA Financial Corp., 123 Mich. App. 162, 171-72, 333 N.W.2d 206 (1983), lv. app. denied, 418 Mich. 858 (1983) and 419 Mich. 881 (1984)*. Michigan law does allow the imposition of "exemplary" damages, which, however, serve a purely compensatory function: to compensate a plaintiff for "the humiliation, sense of outrage and indignity resulting from injuries maliciously, wilfully and wantonly inflicted by the defendant." *Kewin, supra*. Yet, neither punitive nor exemplary damages are recoverable in Michigan in a wrongful death action. *Fellows v. Superior Products, 201 Mich. App. 155, 157-58, 506 N.W.2d 534 (1993)*.

Thus, it is clear, notwithstanding the appearance of the word "exemplary" in the instruction given the jury and in the language of the punitive damages verdict, that punitive damages were designed in this case exclusively to punish defendants for their deliberate indifference to Vine's serious medical needs, and do not pertain to the gross negligence claim under Michigan law. It follows that this Court's evaluation of the punitive damages award is governed by federal standards. *Gordon v. Norman, 788 F.2d 1194, 1199 (6th Cir. 1986)*. [*15] These standards require the Court to evaluate "the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent." *Id.* The Court is obliged to give deference to the jury's discretion, *id.*, and may vacate or reduce a punitive damages award only if it is "so high as to shock the judicial conscience and constitute a denial of justice." *Rodgers v. Fisher Body Division, G.M.C., 739 F.2d 1102, 1109 (6th Cir. 1984)*.

Defendants contend the punitive damages award is excessive because it exceeds their ability to pay, citing *Vasbinder v. Ambach, 926 F.2d 1333, 1344 (2nd Cir. 1991)*. Indeed, the Sixth Circuit, too, has recognized that evidence of a defendant's financial resources may be, but need not be considered in fixing punitive damages. *Gordon, supra, 788 F.2d at 1199, n.6; Rodgers, supra, 739 F.2d at 1109*.

Case 1:07-cv-06116    Document 19-9    Filed 01/11/2008    Page 5 of 8

Page 5
1995 U.S. Dist. LEXIS 15171, *

A defendant who wishes to show that his financial circumstances warrant a limitation of a punitive damages award has the burden of going forward with evidence to this effect. *Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 373 (2nd Cir. 1988)*, cited with approval in *Vasbinder, supra*. Here, [*16] defendants offered no evidence relating to their financial condition and requested no instruction that would have brought this factor within the jury's consideration. The jury's award can hardly be held to be irrational based on circumstances it was never asked or instructed to consider.

Neither is this Court's "judicial conscience" shocked by the award of $ 1,000,000 in punitive damages. Defendants contend the jury must have realized that such an award would be beyond their individual capacity to pay. They suggest the jury may have assumed that their employer, the City of Lansing, would indemnify them for this liability incurred in the course of their employment. To the extent the jury may have intended to impose punitive damages on the City of Lansing or its police department, defendants argue, such a result would be in derogation of the City's absolute immunity from punitive damages liability under § 1983. *City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981)*.

Whether the jury assumed the City would indemnify these defendants is a matter of pure speculation which the Court need not indulge. Moreover, if the jury did entertain [*17] such an assumption, it was likely attributable in some measure to defendants' failure to present proofs on their financial condition. In any event, the jury was properly instructed on the law. Considering the jury's determination that defendants acted with deliberate indifference or reckless disregard for Vine's serious medical condition and that their conduct proximately caused Vine's death, the Court cannot hold that imposition of a severe pecuniary punishment and deterrent is so excessive under the circumstances as to constitute a denial of justice. Accordingly, defendants' challenge to the punitive damages award is rejected.

### E. Settlement Setoff

Prior to trial in this matter, plaintiff settled his claims against defendant Ingham County Sheriff Deputy Steven Maier for the sum of $ 775,000. Defendant Maier, a paramedic, was one of the first officers to have contact with Richard Vine on the day of his death before custody was transferred to the Lansing Police Department. Plaintiff asserted deliberate indifference and gross negligence claims against Maier as well, alleging that his failure to obtain medical assistance for Vine proximately caused his death. Defendants Ruppert [*18] and Moore contend the compensatory damages awarded against them must be reduced by the amount of Maier's settlement to prevent double recovery for the same injury.

Inasmuch as the Maier settlement amount and the compensatory damages award are each designed to compensate the plaintiff estate for loss recoverable under both federal due process and state gross negligence claims, determining whether defendants' motion for set-off relief is governed by federal rule, common law rule or Michigan statutory rule poses an interesting question. See *Wilson v. Garcia, 471 U.S. 261, 267, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1984)*; *Weeks v. Chaboudy, 984 F.2d 185, 188-89 (6th Cir. 1993)*; *Goad v. Macon County, Tenn., 730 F. Supp. 1425 (M.D. Tenn. 1989)*. No applicable federal rule has been cited to the Court, nor is the Court aware of one. As between the common law rule and the Michigan statutory rule, the Court need not choose one over the other, because the result is the same.

The common law rule is well-summarized in *Boyett v. Keene Corp., 815 F. Supp. 204, 208 (E.D. Tex. 1993)* (citations omitted):

> The general principle in cases where offset is claimed is that a plaintiff [*19] is entitled to only one recovery for the injuries suffered.... Where the jury award represents the entire amount of Plaintiff's loss, a reduction must be made for the amounts received from the settling defendant.... In other words, amounts recovered from a settling defendant should be applied as a credit against the amount recovered by the plaintiff from a nonsettling defendant, provided that both the settlement and the judgment represent common damages.... Thus, this so-called "one satisfaction" rule applies only where the defendants' conduct resulted in a single injury.... By contrast, where two or more defendants are responsible for separate injuries, an amount received in settlement from one defendant for one of the injuries may not be used to reduce the liability of the other defendant for the other injuries.

Here, although the alleged deliberate indifference and/or gross negligence of defendant Maier preceded that of defendants Ruppert and Moore by several hours, all three defendants were sued as jointly and severally liable for the same injury, Vine's wrongful death. It is clear that both the Maier settlement and the jury's compensatory damages award represent common [*20] damages. [1] Under the common law rule, therefore, Ruppert and

Case 1:07-cv-06116   Document 19-9   Filed 01/11/2008   Page 6 of 8

Page 6
1995 U.S. Dist. LEXIS 15171, *

Moore are entitled to have their compensatory damages award reduced by the amount of the settlement.

> 1   Although plaintiff has not raised the point, the court recognizes the hypothetical possibility that some portion of the $ 775,000 settlement and some portion of the $ 500,000 damages award might represent compensation for pain and suffering experienced by Vine while conscious prior to his death. As such, the pain and suffering for which Maier would have been deemed liable could be viewed as distinct from the pain and suffering for which Ruppert and Moore would have been deemed liable. In both cases, however, the amount attributable to pain and suffering is a matter of pure speculation and, in the opinion of the Court, cannot reasonably be deemed substantial (1) because Maier was responsible for Vine's safety for only a short time in the morning of January 7, 1992; and (2) because the evidence suggested that Vine was incoherent or unconscious during much of the time he was in Ruppert's and Moore's custody and control.

[*21] The Michigan rule is prescribed by statute:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:
>
>> (b) It reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

M.C.L. § 600.2925d. Thus, again, under the Michigan rule, because Maier, Ruppert and Moore are jointly liable for the same indivisible injury, the jury award must be reduced by the amount of the prior settlement. See *Rittenhouse v. Erhart*, 424 Mich. 166, 182, 380 N.W.2d 440 (1985) (by the time of trial, Plaintiff's "claim" against nonsettling tortfeasors was the amount equal to total damages minus settlement); *Vermilya v. Carter Crompton Site Development Contractors, Inc.*, 201 Mich. App. 467, 472, 506 N.W.2d 580 (1993) (where conduct of two or more actors proximately causes single, indivisible injury, plaintiff may pursue any or all of the defendants for compensation, but is entitled to only one satisfaction).

[*22] Accordingly, defendants' motion for set-off relief must be granted and the judgment must be amended in this respect. [2]

> 2   The set-off does not apply to the award of punitive damages, which, as explained *supra* at p.11, are not compensatory, but punitive, and are individual in nature. See *Boyett, supra*, 815 F. Supp. at 209, n.7; *Goad, supra*, 730 F. Supp. at 1432.

### F. Exemplary Damages

To the extent the punitive damages awarded may have consisted in part of "exemplary" damages, compensating plaintiff for humiliation, sense of outrage and indignity under Michigan law, defendants contend the award should be vacated as possibly duplicative of the compensatory damages award. See *Veselenak v. Smith*, 414 Mich. 567, 327 N.W.2d 261 (1982). There is no ambiguity. The punitive damages awarded in this case are clearly punitive, not compensatory, and relate solely to the § 1983 deliberate indifference claim. The punitive damages do not represent a double recovery. See *supra*, p.11. Defendants' [*23] motion, in this regard, must be denied.

### II. MOTION FOR ATTORNEYS' FEES AND EXPERT FEES

Plaintiff moves the Court for award of attorneys fees and expert fees under *42 U.S.C. § 1988(b)* and *(c)*. Section 1988(b) authorizes the Court, in its discretion, to allow plaintiff a reasonable attorney's fee as prevailing party on the § 1983 claim for deliberate indifference. Plaintiff advises that counsel was retained pursuant to a one-third contingency agreement and asks the Court to award a reasonable attorney's fee in the amount of $ 500,000, one-third of the jury's total verdict.

The prevailing party's contingent fee arrangement is an inappropriate basis for determining the "reasonable attorney's fee" under § 1988. *Blanchard v. Bergeron*, 489 U.S. 87, 96, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989). Section 1988 contemplates "reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Id.*, at 93. Reasonable compensation is determined fundamentally by multiplying the number of hours reasonably expended on the litigation of successful claims by a reasonable hourly rate. *Id.*, [*24] *at*

94; *Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).* The product of this initial calculation may then be adjusted upward or downward depending on consideration of twelve factors enumerated in *Hensley. Id., at 434, 429-30, n.3.*

The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Id., at 437.* Although the "request for attorney's fees should not result in a second major litigation," the applicant must justify his request specifically, for the Court may not simply estimate the appropriate award, but must provide "a concise but clear explanation of its reasons." *Id.* Here, plaintiff has not carried his burden, in spite of the Court having once already required supplemental filings. Rather than simply denying plaintiff's motion, inasmuch as plaintiff did prevail in part, the Court will take the motion under advisement and give plaintiff one more chance to perfect his application, as detailed in the accompanying order.

Plaintiff's request for expert fees is a simpler matter. Under *§ 1988(c)*, the Court may, in its discretion, include expert fees [*25] as part of an attorney's fee award in an action to enforce a provision of *42 U.S.C. § 1981* or *§ 1981a*. Plaintiff did not assert or prevail on any claim under *§§ 1981* or *1981a*. The request for expert fees under *§ 1988(c)* must therefore be denied.

### III. MOTION TO ADD INTEREST

Plaintiff moves the Court to order payment of interest on the judgment from the date of Vine's death, January 7, 1992. It is undisputed that plaintiff is entitled to post-judgment interest pursuant to *28 U.S.C. § 1961(a)*. It is also undisputed that the question of prejudgment interest is a matter for the Court's discretion. *Scales v. J.C. Bradford & Co., 925 F.2d 901, 909 (6th Cir. 1991); EEOC v. Wooster Brush Co. Employees Relief Ass'n, 727 F.2d 566, 579 (6th Cir. 1984); Wildman v. Burlington Northern R. Co., 810 F.2d 601, 609 (7th Cir. 1986), cert. denied, 484 U.S. 821, 98 L. Ed. 2d 44, 108 S. Ct. 82 (1987).* In exercising this discretion, plaintiff asks the Court to take note of the parties' stipulation during trial to the effect that prejudgment interest would be paid upon any recovery.

The stipulation was reached during the settling of jury instructions. The Court summarized the parties' agreement on the record [*26] as follows:

> The first stipulation is that the parties have agreed that the jury will not be asked to calculate interest on any award they may provide for in this case and that if damages are awarded to the plaintiff, then the Court will perform the interest calculation based upon the state judgment rate, and that that calculation will be made as of the date of the incident.

Record of Trial, April 6, 1995. As a result of this stipulation, plaintiff withdrew his request that the jury be instructed in accordance with Michigan Standard Jury Instructions (Civil) 2d, 53.04. S.J.I.2d 53.04 provides that if a jury finds that the plaintiff has suffered damages, then it should award interest on those damages, from the date the damages accrued to the date the complaint was filed.

Thus, the stipulation must be understood as an agreement that if an award of compensatory damages were made by the jury, then the Court, rather than the jury, would calculate and add prejudgment interest from January 7, 1992, pursuant to *M.C.L. § 600.6013*. It cannot have been within the Parties' contemplation that this prejudgment interest addition would apply to the punitive damages award, because [*27] they are not compensatory in nature, but punitive. This result is consistent with the general rule, recognizing that prejudgment interest is appropriate to make an injured party whole, but is not applied to punitive damages, the right to which does not accrue until entry of judgment. See *United States v. Imperial Food Imports, 834 F.2d 1013, 1016 (Fed. Cir. 1987); Mill Pond Assoc. v. E & B Giftware, Inc., 751 F. Supp. 299, 302 (D. Mass. 1990); Bailey v. Container Corp. Of America, 660 F. Supp. 1048, 1055 (S.D. Ohio 1986).*

Accordingly, the Court in the exercise of its discretion, and consistent with the parties' agreement, will award prejudgment interest on the award of compensatory damages, plus attorneys' fees and costs, pursuant to *M.C.L. § 600.6013(6)* -- or more specifically, that portion of the sum that is not reduced by the settlement set-off -- from January 7, 1992, until the date that final judgment is entered in this case. However, because the recoverable attorneys' fees and costs remain indeterminate, calculation of prejudgment interest must also wait.

### IV. MOTION FOR TAXABLE COSTS

Plaintiff moves for an order awarding him his costs under *Fed. R. Civ.* [*28] *P. 54(d)*. In support, he submits a detailed bill of costs totaling $ 42,199.48. Defendants object to many of the items of costs claimed, arguing they are not recoverable under *28 U.S.C. § 1920*. In response, plaintiff has conceded many points of objection and has amended his request, deleting many items, but adding others. The reduced bill of costs totals $ 17,236.54. Defendants have filed no objection to this amended bill of costs, although they had earlier objected

to plaintiff's request for mediation fees in the amount of $ 3,150.00

The parties were ordered to participate in mediation pursuant to W.D. Mich. L.R. 42. Each party was required to pay the three mediators a total of $ 150. Plaintiff offers no justification for his request for an additional $ 3,000. Presumably, the parties agreed to pay the mediators more than the standard fee, but did not seek Court approval of this arrangement. See W.D. Mich. L.R. 42(f)(4) and (5).

Although 28 U.S.C. § 1920 does not explicitly provide for the recovery of mediation fees, it is appropriate that fees incurred pursuant to court order be recovered. The court thus awards plaintiff the standard mediation fee of $ 150, but disapproves the [*29] request for the additional $ 3,000. Subject to this subtraction, plaintiff is entitled to recover costs in the base amount of $ 14,236.54.

In addition, plaintiff seeks expert witness fees and travel expenses in the amount of $ 37,118.55. Recovery of such costs is governed by 28 U.S.C. § 1821, which allows an attendance fee of $ 40 per day for each day's attendance and actual expenses of travel, as proven by receipt or other evidence. The Court may abuse its discretion if it awards costs beyond those authorized by § 1821. See *Amsted Industries v. Buckeye Steel Castings, 23 F.3d 374, 379 (Fed. Cir. 1994)*; *Holmes v. Cessna Aircraft Co., 11 F.3d 63, 65 (5th Cir. 1994)*; *Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir. 1993)*.

Here, again, the record is not sufficient to enable award of expert witnesses fees and expenses. Plaintiff has certainly failed to demonstrate entitlement to costs in the amount of $ 37,118.55. See *Holmes, supra, at 65*. Plaintiff's request for these costs is provisionally denied, subject to reconsideration based on plaintiff's supplemental filing in accordance with the order that follows.

## V. MOTION FOR MEDIATION SANCTIONS

Plaintiff [*30] has advised that he wishes to withdraw his motion to impose mediation sanctions. The motion will therefore be denied as moot.

## VI. ORDER OF THE COURT

In accordance with this opinion,

IT IS HEREBY ORDERED that defendant's motion for judgment n.o.v. or new trial is **DENIED** in all respects but one. The judgment will be amended to reflect set-off of the settlement amount already received by the plaintiff estate from defendant Ingham County Sheriff Deputy Steven Maier after the amounts of plaintiff's recoverable attorneys' fees and costs are finally determined.

**IT IS FURTHER ORDERED** that plaintiff's motion for expert fees under *42 U.S.C. § 1988(c)* is **DENIED** and plaintiff's motion for attorneys' fees is **TAKEN UNDER ADVISEMENT**. Plaintiff shall file his supplemental brief in support of his request for attorneys' fees in accordance with part II of this opinion not later than October 25, 1995. Defendants shall file their objections or response to plaintiff's supplemental brief not later than November 8, 1995. Plaintiff shall file his reply not later than November 15, 1995.

**IT IS FURTHER ORDERED** that plaintiff's motion to add interest is **GRANTED** in part [*31] and **DENIED** in part, with the final calculation of prejudgment interest to be made after plaintiff's motions for attorneys' fees and costs are finally determined.

**IT IS FURTHER ORDERED** that plaintiff's motion for taxable costs is **GRANTED** in part and **DENIED** in part. Plaintiff may, in conjunction with his supplemental brief on attorneys' fees, seek reconsideration of his request for expert witness fees by substantiating the witnesses' trial attendance and travel expenses as required by *28 U.S.C. § 1821*. Defendants may object and plaintiff may reply in accordance with the briefing schedule already established.

**IT IS FURTHER ORDERED** that plaintiff's motion for mediation sanctions is **DENIED**.

Dated: September 28, 1995

DAVID W. McKEAGUE

UNITED STATES DISTRICT JUDGE