

LEXSEE 1994 U.S. DIST. LEXIS 1593

**MARIE E. PHILIPPON RAMIREZ, Plaintiff, v. JOSEPH P. KELLY, individually and in his official capacity and the CITY OF CHICAGO, a municipal corporation, Defendants.**

No. 92 C 8127

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1994 U.S. Dist. LEXIS 1593*

**February 10, 1994, Decided**
**February 16, 1994, Docketed**

JUDGES: [*1] Andersen

OPINION BY: WAYNE R. ANDERSEN

OPINION

*MEMORANDUM, OPINION, AND ORDER*

Defendant City of Chicago ("the City") moves the court to dismiss in part the first amended complaint of Plaintiff, Marie E. Philippon Ramirez ("Ramirez"), for failure to state a claim upon which relief may be granted in Counts III and IV, and to strike Ramirez's prayer for relief in Counts I and IV. For the following reasons, we grant the City's motion in its entirety.

I. FACTS

Ramirez alleges that the City, a municipal corporation, has employed Ramirez from December 16, 1992 until the present. Ramirez is a Clerk II in the City's Department of Police. Throughout her employment, the City has given Ramirez regular salary increases and highly favorable performance ratings.

The City also employs Joseph P. Kelly, a captain in the City's Department of Police. From October 19, 1990 to January 1, 1991, Kelly was Ramirez's immediate supervisor. According to Ramirez, Kelly subjected her to sexual harassment, including compelling Ramirez to in the most intimate types of behavior. Ramirez alleges that she responded to Kelly's behavior out of fear and coercion because Kelly occupied a significant position which could affect [*2] Ramirez's future employment.

Ramirez also asserts that Kelly intentionally treated her differently from male officers on account of her sex.

Moreover, Ramirez alleges that the City had a policy or custom, implemented by and through Kelly, of deliberate indifference and allowance of sexual harassment from supervisors and co-workers against employees. Ramirez alleges that the City maintained a deliberate indifference to Kelly's constant sexual harassment of Ramirez over a three-month period and that Kelly acted with an intentional, reckless, and indifferent manner to Ramirez's civil rights.

Ramirez also alleges that she made complaints through official channels at the City's Department of Police to remedy Kelly's acts. According to Ramirez, the City took no actions to remedy Kelly's acts, thereby demonstrating deliberate indifference to the harm suffered by Ramirez and supporting a policy and custom of sexual harassment.

DISCUSSION

In considering a motion to dismiss, the court must accept as true all the well-pleaded material facts in the complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991).* [*3] Further, the complaint should not be dismissed unless it appears, beyond a doubt, that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).*

The City raises four arguments in its motion. First, the City argues that Ramirez's claims in Count I for compensatory damages should be stricken. Second, the City argues that Count III should be dismissed because it fails to state a claim for municipal liability against the City. Third, the City argues that Count IV should be dismissed against the City because the allegations fail to

state a claim upon which relief can be granted. Fourth, the City argues that Count IV's prayer for punitive damages against the City should be stricken.

## I. RAMIREZ'S PRAYER FOR COMPENSATORY DAMAGES IN COUNT I.

Count I of Ramirez's first amended complaint is a claim of sexual harassment pursuant to *42 U.S.C. § 2000e, et. seq.* ("Title VII"). In her prayer for relief, Ramirez asks that judgment be entered in her favor in an amount of the maximum permitted by Title VII of the Civil Rights Act.

The 1991 Civil [*4] Rights Act, which provides compensatory damages for claims brought pursuant to Title VII, was signed into law on November 21, 1991. The Seventh Circuit has held that the 1991 Civil Rights Act should not be applied to claims which occurred before the enactment of the new Civil Rights Act. *Mojica v. Gannett Co., 7 F.3d 552, 558 (7th Cir. 1993)* (en banc); *Luddington v. Indiana Bell Telephone Co., 966 F.2d 225, 229-30 (7th Cir. 1992).* In this case, the alleged discriminatory acts occurred from October 19, 1990 to January 1, 1991, ending ten months prior to the enactment of the 1991 Civil Rights Act. Accordingly, compensatory damages are not available to Ramirez under the 1991 Civil Rights Act. In her brief, Ramirez concedes that her prayer for compensatory damages in Count I should be stricken.

We note that the United States Supreme Court will address the issue of the retroactive application of the 1991 Civil Rights Act in *Landgraf v. USI Film Prod., 122 L. Ed. 2d 649, 113 S. Ct. 1250* (cert. granted February 2, 1993). Ramirez argues that she should be allowed to replead the damage provisions in Count I if the Supreme [*5] Court decides that the 1991 Civil Rights Act should be given a retroactive application. Should the Court decide *Landgraf* differently than the Seventh Circuit has in *Mojica* and *Luddington*, then Ramirez must make a motion for leave to file an amended complaint after *Landgraf* has been decided. However, at this time, the court is bound by Seventh Circuit law, and Ramirez's claim for compensatory damages is stricken.

## II. RAMIREZ'S CLAIM OF § 1983 MUNICIPAL LIABILITY IN COUNT III AGAINST THE CITY.

To establish whether a complaint sufficiently alleges a *§ 1983* claim of liability against a municipality, a plaintiff must plead a deprivation of constitutional rights under *§ 1983* and that the deprivation occurred as a result of a policy, custom, or practice of the municipality. *City of Canton v. Harris, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).* Hence, a municipality can be found liable under *§ 1983* only if the municipality itself, through the execution of a policy or custom, caused the alleged constitutional violation. *See id. at 385.* Thus, to state a claim for relief against a municipality, the plaintiff must link the acts [*6] which deprived him of his constitutional rights to some governmental policy or custom. *See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985).* Furthermore, the link must be such that this policy or custom was the "moving force" behind the constitutional deprivation. *Kentucky v. Graham, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985).*

Hence, in order for a plaintiff to establish that the municipality had a custom or policy that resulted in a constitutional deprivation, the custom or policy must be attributable to a conscious decision by municipality officials possessing final policymaking authority in the relevant area of the municipality's business. *Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 737, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 121-123, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988).* The identity of a municipal policymaker is a question of local law, *Prapotnik, 485 U.S. at 123-25,* which involves searching for the ultimate legislative power in the municipality. *Ariemma v. City of Chicago, 957 F.2d 397, 400 (7th Cir. 1992).*

In [*7] the City of Chicago, employment policies, including any policies on sexual harassment, are vested only in the City Council and the City's Commissioner of Personnel, to whom the City Council has delegated authority to issue personnel rules. *Limes-Miller v. City of Chicago, 773 F. Supp. 1130, 1136 (N.D. Ill. 1991)* (citing Municipal Code § 2-74-050). Even the Superintendent of Police lacks final employment policymaking authority in the City of Chicago. *Auriemma, 957 F.2d at 401; Santella v. Grishaber, 936 F.2d 328 (7th Cir. 1991).*

In Count III of her first amended complaint, Ramirez alleges that the City had a policy or custom implemented by and through Kelly, a captain of police in the City's Department of Police, of maintaining a deliberate indifference to Kelly's alleged sexual harassment of Ramirez. Plaintiff alleges that she made complaints through official channels at the Department of Police, but that no actions were taken to remedy Kelly's actions. According to Ramirez, this deliberate indifference to her rights constitutes a custom or policy of the City.

Reading all reasonable inferences [*8] in Ramirez's favor, Count III nonetheless fails to establish that the alleged acts against Ramirez were attributable to a policy of the City. Ramirez cannot point to any legislative custom or policy promulgated by the City Council or the City's Commissioner of Personnel that even remotely links Kelly's alleged acts to a policy of the City. Rather, Ramirez's allegations merely establish that Kelly's ac-

tions were the result of *Kelly's* indifference to Ramirez's constitutional rights.

Ramirez, however, argues that Kelly's actions can be attributed to a custom or policy of the City. Admittedly, a supervisor's deliberate indifference to the violations of the plaintiff's constitutional rights through constant sexual harassment may be more than a single isolated constitutional violation, and thus attributable to the municipality as a policy. *Murphy v. Chicago Transit Auth., 638 F. Supp. 464, 471 (N.D. Ill. 1986).* However, a plaintiff must still show that the alleged practice is so permanent and well-settled as to have the "force of law." *Jett, 491 U.S. at 737.* The series of constitutional deprivations must be so widespread [*9] and longstanding that the holder of the municipality's legislative power must have been aware of the deprivations but was deliberately indifferent to the need for corrective action. *Auriemma, 957 F.2d at 399.*

Here, Ramirez's allegations do not establish that the City Council or Commissioner of Personnel were aware of the deprivations and still deliberately indifferent to the need for corrective action. Ramirez alleges that she made complaints through official channels at the Department of Police which were never responded to by the Department. However, these complaints do not transform the Department's refusal to help Ramirez into a policy or custom of the City. The mere fact that the alleged conduct occurred over a nine-week period while the City failed to respond to Ramirez's complaints is insufficient to attribute Kelly's conduct as being a formal policy of the City that had the effect of settled law. Based on these facts, Ramirez can point to no facts to show that Kelly's conduct may be properly linked with a policy of the City. Accordingly, Count III is dismissed against the City.

### III. RAMIREZ'S *FOURTEENTH AMENDMENT* ALLEGATIONS IN COUNT IV.

[*10] In Count IV of her first amended complaint, Ramirez alleges that Kelly's actions constitute a seizure of Ramirez's person and a denial of her right to due process of law. She alleges that Kelly's actions constitute a policy of the City of deliberate and reckless indifference to the protection of Ramirez's *Fourteenth Amendment* rights as an employee of the City. The City argues that Ramirez's claims are insufficient to state a claim upon which relief may be granted because they do not establish that Kelly was denied either equal protection nor due process.

Although it is unclear from the complaint, Ramirez appears to allege that her equal protection rights were violated because she was treated differently than other employees of the Chicago Police Department. However, City policy prohibits discrimination on the basis of sex. *See Limes-Miller,* 733 F. Supp. at 1136; *see also* Municipal Code of Chicago § 2-74-080 ("no person shall discriminate against any employee or applicant because of race, color, sex . . ."). Hence, Ramirez cannot establish that her *Fourteenth Amendment* rights pursuant to the *equal protection clause* were violated by any official City [*11] policy.

Moreover, Ramirez's allegations are insufficient to establish that her rights pursuant to the *equal protection clause* were the result of an informal policy or custom. In fact, she does not even allege that the complained of actions were the result of an informal policy or custom of the City. However, even if she had, she would have had to establish that the informal policy or custom was "an entrenched practice with the effective force of a formal policy." *Gray v. Dane County, 854 F.2d 179, 183 (7th Cir. 1988).* Single deviations from an otherwise constitutional policy do not rise to the level of a custom or practice sufficient to trigger municipal liability for a constitutional violation. *Easter House v. Felder, 910 F.2d 1387, 1403 (7th Cir. 1990), cert. denied, 498 U.S. 1067, 111 S. Ct. 783, 112 L. Ed. 2d 846 (1991).*

Ramirez has not established that her equal protection rights were violated because of an entrenched City practice which had the effective force of City policy. If true, Kelly's actions are properly viewed as isolated, albeit deplorable, occurrences that do not constitute habitual or entrenched practices [*12] of the City. Accordingly, Count IV fails to state a claim for any violation of the *Fourteenth Amendment* pursuant to the *equal protection clause.*

Ramirez also alleges that Kelly's conduct violated her *Fourteenth Amendment* due process rights. She specifically alleges that Kelly's actions constitute a seizure of her person and a denial of her right to due process of the law. The City argues that these allegations are insufficient to establish that Ramirez was denied due process of law in violation of the *Fourteenth Amendment.*

Deprivations of life, liberty, and property without due process of law must be alleged in more than a general and conclusory fashion. *See Daniels v. Williams, 474 U.S. 327, 331-32, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); Parratt v. Taylor, 451 U.S. 527, 536-38, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1986).* Here, Ramirez's allegations allege nothing more than that she was deprived of her right to due process. Ramirez does not make specific allegations of how these rights have been violated. Even reading Ramirez's allegations in the light most favorable to her, Ramirez's allegations are not sufficient to establish that her due process rights have been violated. Accordingly, [*13] Count IV fails to state a claim for any violation of Ramirez's due process rights.

### IV. RAMIREZ'S PRAYER FOR PUNITIVE DAMAGES IN COUNT IV AGAINST THE CITY.

In her prayer for relief in Count IV of her first amended complaint, Ramirez requests three million dollars in punitive damages against the City. However, punitive damages may not be assessed against a municipality under § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981); *Spanish Action Committee of Chicago v. City of Chicago,* 811 F.2d 1129, 1134 (7th Cir. 1987). Accordingly, since Count IV is brought pursuant to § 1983, and since the City is a municipality, Ramirez's claim for punitive damages against the City must be stricken.

### CONCLUSION

For the foregoing reasons, the City of Chicago's motion to dismiss in part plaintiff's first amended complaint is granted in its entirety. Accordingly, the following claims in plaintiff's first amended complaint are dismissed: plaintiff's request for compensatory damages in Count I; the § 1983 municipal liability claims against the City in Count III; the *Fourteenth Amendment* claims against the City [*14] in Count IV; and the request for punitive damages against the City in Count IV.

Wayne R. Andersen

United States District Judge

Dated: *February 10, 1994*

131P8Q

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Thursday, January 10, 2008   13:15:41 EST

Print Number:    1862:68726396
Number of Lines: 192
Number of Pages:

Send To:  MARTIN, MISTY
          SEGAL MCCAMBRIDGE SINGER & MAHONEY LTD
          330 N WABASH AVE STE 200
          CHICAGO, IL 60611-7764